## STATE v. JOSEPH W. BRAGDON.[1]

April 27, 1917.

Nos. 20,226—(20).

**Abuse of child — verdict sustained.**

1. Evidence considered and *held* sufficient to justify the verdict of the jury.

**Examination of juror during recess of court — absence of defendant.**

2. After the trial was under way, the trial judge, during a recess of the court and in the presence of counsel for both the defendant and the state, called two of the jurors into his chambers, one at a time, and inquired of them concerning their having been tampered with. Error is now claimed from the fact that the defendant was not present at this inquiry. The incident was no part of the trial, and no challenge having been taken to either juror and no objection having been made on account of the absence of the defendant, it is *held*, that the defendant is in no position to complain, nor were his rights, in any manner, prejudiced.

**Criminal law — conduct of prosecutor.**

3. Statements of the prosecuting attorneys made during the trial and upon the argument to the jury considered and *held* not to have prejudiced the rights of the defendant.

[1] Reported in 162 N. W. 465.

**Refusal of court to read statute to jury.**

4. Where the evidence is conflicting as to whether the alleged offense was committed within the county named in the indictment, it was not error, under the evidence in this case, for the court to refuse to read to the jury the statute fixing the boundary line of the county.

**Assignment of error.**

5. Assignments of error challenging the fairness of the trial, *held* not sustained by the record.

Defendant was indicted by the grand jury, tried in the district court for Hennepin county before Fish, J., and a jury, and convicted of the crime of carnal knowledge of a female child of the age of 14 years. From an order denying his motion for a new trial, defendant appealed. Affirmed.

*Charles B. Elliott* and *Thomas W. Beare,* for appellant.

*Lyndon A. Smith,* Attorney General, *John M. Rees,* County Attorney, *George W. Armstrong* and *Walter H. Newton,* Assistant County Attorneys, for respondent.

QUINN, J.

Defendant was indicted, tried and found guilty of the charge of carnally knowing and abusing a female child of the age of 14 years. He appealed from an order denying a new trial.

The appeal brings the cause to this court upon a full and complete record of the proceedings and evidence had and, taken below, and the errors complained of are embraced under some 50 odd assignments by which the rulings of the trial court, the sufficiency of the evidence, the conduct of the trial by the prosecuting attorneys are challenged as erroneous, prejudicial and of a character not only to justify but require a new trial in the interests of justice. We have given all these matters careful consideration and are unable to concur in this contention.

In reaching this conclusion we have not overlooked any of defendant's assignments of error, but have given each the special consideration the importance thereof has seemed to demand. While there are a great number of alleged errors, the princiopl point narrows down to the claims: (1) That the verdict is not sustained by sufficient competent evidence; (2)

that the witnesses produced by the state, and upon whom reliance neces-
sarily was had to establish the guilt of defendant, were wholly unworthy
of belief, and that the act charged against the defendant, in the manner
testified to by the witnesses to have been committed, was impossible of
accomplishment; and (3) that by reason of the misconduct of the prose-
cuting attorneys, the prejudicial rulings and remarks of the trial court,
the conduct of the bystanders in the court room during the trial, ap-
plauding certain of the acts and remarks of the prosecuting attorneys, the
agitated state of the public press and public mind which permeated the
jury box, defendant was not given that fair and impartial trial he was
entitled to under the Constitution and laws of the state.

Though the case is of more than passing importance, the questions
presented do not require extended discussion. The first two, namely, the
credibility of the witnesses produced by the state and the sufficiency of
the evidence, may be disposed of together, as they relate to one distinct
branch of the case.

1. The crime was alleged to have been committed on or about June 1,
1913. The indictment was not found by the grand jury until March,
1916, nearly three years after the date on which the crime is charged to
have been committed.

2. The prosecutrix, for she may be so termed though she did not, by
complaint, initiate the prosecution, was then in the neighborhood of 14
years of age. She had as companions two girls of about the same age.
One of these joined with the prosecutrix and gave evidence tending to
convict defendant of the charge. They were, in certain respects, cor-
roborated by another state witness, a married woman who testified to acts
of undue familiarity by defendant with the girls at her home. Her char-
acter was vigorously assailed and, in one respect at least, shown to be not
of a high order. The two girls mentioned gave direct and positive evi-
dence of the commission of the crime, and, if their testimony is worthy
of belief, this evidence was amply sufficient to support the verdict. Their
credibility is challenged with much earnestness by counsel for defendant.
It is a fact that the girls were of the street, if not thoroughly hardened at
the time, were leading a life that tended to and subsequently did bring
them to public attention, and they were apprehended by process from the
juvenile court and committed to the state institution for the reformation

of their kind. There is no claim that defendant had led them astray or was the cause of their downfall, though it is claimed that, by his conduct toward them, he aided in the accomplishment of that end. They were in the state school at the time of the trial, and an effort was made to show that their evidence was influenced by those in charge of the institution, and others, worthy women of Minneapolis, who were active in support of the state's side of the case. It was further claimed that the girls had been led to believe that, if they would testify against the defendant, they would soon be released. The married woman referred to, who, in a measure, corroborated the girls, together with her husband, became active in support of the defendant, and was engaged in looking up evidence for him for a time prior to the trial, but she finally gave evidence against the defendant to the extent stated. This witness had been unduly familiar with the defendant, and it is quite clear that her first impulse was to shield him so far as she could, provided the defendant would yield up the necessary inducing element, a liberal amount of money. The evidence clearly indicates, and the jury would have been justified in concluding, that much of her conduct and that of her husband was in the hope that they would be liberally compensated for their efforts to shield the defendant. The money was not forthcoming, and she testified for the state.

The crime was committed, if at all, near a public highway in the outskirts of Minneapolis. Defendant had met two of the girls on previous occasions, but this was the first time that he had come in contact with the prosecutrix. He is a man of prominence in the business world, and owns and drives an automobile. On this occasion he met the girls on the street and invited them to go riding in his car. It was on this trip that the crime was committed. He took the stand as a witness in his own behalf, and though admitting that he knew the girls and that he took them for an automobile ride as they claim, yet he denied emphatically the charge of abusing either of them in the manner testified to, or at all. The evidence also shows that he gave the girls money, and that, on other occasions he had taken them auto riding and otherwise entertained them. This was not disputed by the defendant, and his explanation thereof was that he was in the habit of entertaining young girls of the poorer class, but with no thought of violating their persons.

Such is this case, in a general way, as made by the evidence. As

heretofore remarked, if the evidence submitted by the state is worthy of belief, it is amply sufficient to sustain the verdict. Whether the witnesses were worthy of belief, and whether the testimony of the girls was unduly influenced against the defendant, were questions of fact. They were presented to and considered by the trial judge and jury, and the answers were adverse to defendant. The witnesses were before the jury and the trial judge, an opportunity was afforded for judging of their honesty of purpose, and the answers thus given cannot be disturbed, for we find no basis in the record to justify us in declaring that both court and jury were clearly in error. We therefore hold without further comment that the verdict of the jury must stand.

The contention that defendant was not given a fair trial—such a trial as the Constitution and laws of the state guarantee—is not sustained. This was the third trial of defendant, though under different indictments, all involving the same charge as to the girls referred to; defendant was acquitted on the first, but the jury disagreed on the second. The present case was vigorously prosecuted and as vigorously defended. Much was said by counsel for both the state and defendant that might well have been left unsaid, but measured from the unbiased viewpoint, nothing appears ·of sufficient moment to require special mention, or to justify the conclusion that defendant was, in any substantial way, prejudiced by the conduct of the prosecuting attorney. The rulings of the trial court were impartial, fair and correct, and no act or remark of the learned trial judge can be pointed out in support of the contention that the trial was disorderly or punctuated by applause from the bystanders. There was some commotion among the morbid spectators at one time, but it was promptly suppressed by the court. In fact, we are impressed by the record that the learned trial judge exerted every effort to maintain order in the court room and to conduct the trial in harmony with orderly court procedure. The agitated public mind was not brought into the case to an extent to justify interference by this court, and, on the whole, we are satisfied that the defendant was afforded a fair trial and the record presents no just cause for complaint.

3. Some question was raised on the trial in regard to venue, it being claimed by the defendant that the evidence of two of the state witnesses located the place of the commission of the alleged crime in Ramsey

county. The question was submitted to the jury under proper instructions, and the jury instructed that, if they found the crime to have been committed in Ramsey county, there could be no conviction. In this connection defendant's counsel requested the court to read to the jury the statute relating to the boundary between Ramsey and Hennepin counties, and complaint is made of the refusal of the court to do so. In this we find no error. The court was not bound to read the statute to the jury. The evidence locating the place of the commission of the crime in Hennepin county was strong and persuasive, and supports the verdict of the jury. It would have served no useful purpose to have read the statute to the jury.

4. After the trial was under way, information of matters, which, if true, might affect the qualifications of two of the jurors, reached the trial judge. With the assent of the counsel for both the defendant and the state, the court called the two jurors into his chambers during a recess of the court, and, in the presence of both counsel, questioned them concerning the rumors. The examination was satisfactory to both counsel, and disclosed that the reports were without foundation. Error is now claimed from the fact that the defendant was not present at this inquiry. This contention is not sustained. The incident was no part of the trial. It is apparent that the purpose of the court was to ascertain whether the jurors had been tampered with so that counsel upon either side might interpose a challenge, if desired. No challenge was made to either juror, nor was any objection made on account of the absence of defendant, or otherwise; and, since the inquiry was not a step in the trial, we are satisfied that the defendant is in no position to complain; at least, it does not appear that his rights were, in any manner, prejudiced.

5. What has been said covers all the assignments of error requiring special mention. Those not included in the points disposed of have been fully considered, with the result that no reversible error appears.

Order affirmed.