STATE v. WALTER STAVENEAU.[1]

March 7, 1924.

No. 23,787.

**Erroneous admission of evidence prejudicial.**
1. Defendant was not entitled to a dismissal or instructed verdict, nor was his guilt so conclusively established that errors in the admission of evidence may be held without prejudice.

**No violation of defendant's right to be at trial.**
2. The record fails to show that defendant's right to be present at all stages of the trial was violated.

**Offer of hearsay evidence properly denied.**
3. While a defendant may always show that the crime of which he is accused was committed by another, he cannot do so by mere hearsay, or proof which does not tend to connect such other person with the crime.

**Evidence admissible to show recognition of owner by stolen hen.**
4. Where there is testimony that a certain animal has acquired the habit of recognizing a person and evidencing such recognition, it is proper, when the identity of such animal is in issue, to receive evidence as to the conduct of such animal toward that person.

**Evidence of experiments with chickens inadmissible when no foundation laid.**
5. But it is improper to receive evidence of experiments or tests with animals to prove identity, where there is no foundation laid that those animals have acquired certain fixed traits or habits in respect to the subject of the test so that identity might be revealed with some certainty.

Defendant was indicted by the grand jury of Waseca county charged with the crime of larceny in the second degree, tried in the district court for that county before Senn, J., and a jury which found him guilty as charged in the indictment. From an order

[1]Reported in 197 N. W. 667.

denying his motion for a new trial, defendant appealed.   Reversed.

*Moonan & Moonan* and *H. H. Dunn*, for appellant.

*Clifford L. Hilton*, Attorney General, and *James E. Markham*, Deputy Attorney General, and *John J. Spillane*, County Attorney, for respondent.

HOLT, J.

Defendant was convicted of stealing chickens and appeals from the order denying a new trial.

One Mrs. Adams owned a farm with the usual farm buildings some miles west of Elysian.   No one resided thereon.   A few weeks previous to August 7, 1922, she had moved to this farm, from her home in the village, 11 hens and some 240 young chickens.   All were Rhode Island Reds except two young Buff Orphingtons.   A boy living near the farm closed the door of the chicken house every evening after the chickens had gone in to roost, and let them out in the mornings.   Between the evening of the seventh and the morning of the eighth of August, 1922, the chickens were stolen.   Five days thereafter Mrs. Adams claims to have identified some of them in the chicken house of defendant, about two miles north by the road from Mrs. Adams' farm buildings.   Defendant was also raising Rhode Island Reds.   Mrs. Adams identified the two Buff Orphingtons, one young chick, the bill of which she had trimmed, and 9 hens.

The contention that the evidence is insufficient to convict cannot be sustained.   Mrs. Adams' identification is positive.   That her chickens were stolen is not disputed, and, if some of them were found in defendant's possession shortly after the larceny, it would be persuasive evidence of defendant's participation in the crime. There was a case made for the jury, but it is not of the character to which the rule of State v. Nelson, 91 Minn. 143, 97 N. W. 652, applies.

There is nothing to the contention that the defendant's rights were violated in that the trial at one time proceeded in his absence.   After the case had been submitted to the jury, that body came in for further instructions.   The court merely put a few questions to learn their wishes, but the moment it appeared that further instructions

were desired, the proceedings were suspended until the presence of defendant was secured when the instructions were given.

The state's case disclosed that, the morning after the theft, the husband of Mrs. Adams traced the tracks of an automobile which had stopped at the side of the road near the chicken house to the home of a Mr. O'Brien, three miles southeast. Because the track seemed to go into O'Brien's yard and because of overhearing a remark of Mrs. O'Brien to her husband, Mr. Adams' suspicions were aroused, and he swore out a complaint upon which issued a warrant to search O'Brien's premises. But, evidently, these chickens were not found. Defendant offered to prove that a witness he produced listened in on a rural telephone line a day or two after the larceny and heard Mrs. O'Brien state to a chicken buyer at Smith's Mill that they had a quantity of chickens to sell, that the price was stated, and that the chicken buyer said he would be out to see them. The offer was excluded upon objection. No doubt one accused of crime may prove that it was committed by another, but we think this offer did not tend to show any connection of the O'Briens with the theft. Furthermore, it was the rankest hearsay. Mays v. State, 72 Neb. 723, 101 N. W. 979. The offer was properly excluded according to what may be said to be the almost unanimous holdings of the courts. It did not even come within the principle favored by Mr. Wigmore in his work on Evidence sections 1476 and 1477, and the author of the note to Brown v. State, 37 L. R. A. (N. S.) 345.

There was proof that one of the hens stolen was a pet hen of Mrs. Adams; that it would come at her call and walk around her "singing." Over objections the state was permitted to show how this pet hen acted and "sang" when Mrs. Adams came to defendant's chicken house and called the hens. We think a proper foundation was laid for this evidence. The peculiar trait or habit of this particular hen had been proven. Animals do recognize their keepers. And it was shown that this hen which Mrs. Adams identified had, while under Mrs. Adams' care previous to the theft, developed a marked preference for her and a distinctive manner in which to give vent to such preference or recognition.

Against objection, evidence was received as to an experiment or test made with the 9 chickens which Mrs. Adams identified as hers among the flock in defendant's chicken house. Mr. Adams proposed the test to defendant, but he declined to participate therein or be bound thereby. The test was this: About sunset these 9 chickens were taken in crates to the Adams' farm and liberated about 55 feet south of the chicken house. They fed and scratched around for ten minutes or so working up toward the chicken house and then, instead of seeking entrance from the front or south side, they went around to the east and entered through a small slide door at the corner where Mrs. Adams' chickens before the theft were wont to enter. A half an hour after the first experiment two of the chickens were again taken out and liberated at the same place. In 4 minutes they were back in the chicken house. It is sought to sustain the ruling upon the old saw that "chickens come home to roost," and the bloodhound cases. But all ancient sayings are not approved legal maxims, nor do they always express truths so generally accepted as to be a part of the common knowledge of which courts must take notice. And as to the bloodhound cases, we find that the courts, which have received evidence of the result of a bloodhound's tracking in a criminal action, hold that a foundation must be laid by showing the training and demonstrated ability of the particular hound whose actions are to be testified to. The known habits and high reputation of that breed of dogs for trailing is not deemed sufficient foundation. Crosby v. Moriarty, 148 Minn. 201, 181 N. W. 199.

The only case we have found sustaining the reception in evidence of an animal experiment somewhat similar to the one in question is State v. Ward, 61 Vt. 153, 17 Atl. 483, where the prosecution was permitted to show that the horse, driven by the accused on the date of the arson, when thereafter being driven along the same road, of his own accord, made a sharp turn into another road, and then in a like manner off the latter road at a place where the party evidently left the rig for the building that was set on fire. But even there some evidence was offered of the habit of that horse turning into premises and roads previously traversed. The remark of the

court that "every one familiar with horses is aware of their constant habit and custom in that respect," is putting it rather strong. We cannot affirm that an animal's conduct is ruled by one or two of its prior experiences. While it is true that some individual of a species often exhibits wonderful ability in finding its way and home, still as to most of the domesticated animals there is no such certainty of uniform conduct that human guilt or innocence should be determined by tests with them such as here made. Every automobile driver would say that no animal displays less sense of the location of its home and place of safety in face of danger than a chicken.

If the chickens experimented with were Mrs. Adams', they were accustomed to spend the night in a chicken house, and had done so with equal readiness in three different localities within the period of a few weeks; and, again, if the chickens were defendant's, they were equally accustomed to enter a chicken house at night. It may be readily admitted that there is probative value in tests of the sort here used. But the danger is that it may be greatly overrated by a jury, each member of which may recall some instance where some animal exhibited traits similar to that shown by the test. If experiments like the ones here may be received in evidence, the freak act of some animal, the motives of which cannot be inquired into, may often serve to convict men of heinous crimes. When animals are allowed to take the witness stand, so to speak, their testimony should be limited to those matters wherein human knowledge and experience have ascertained that they therein habitually reveal the truth; such, for instance, as that a colt will know and follow its dam (Miller v. Territory, 9 Ariz. 123, 80 Pac. 321), or that an adult dog will recognize and cling to a master who has had him under control for some considerable time, or where it is proven that a horse or an ox has been trained to go to its stall in a barn so that a fixed habit has been acquired so to do. Of course, tests or experiments with inanimate objects stand upon a different basis. We are of opinion that no proper foundation was laid for the reception of the experiments in question, and for that error there must be a new trial.

Order reversed and a new trial granted.