STATE OF NEW JERSEY, DEFENDANT IN ERROR, v. BONAVENTURA NARDELLA, PLAINTIFF IN ERROR.

Argued February 4, 1931—Decided May 18, 1931.

For the plaintiff in error, *John C. Barbour* and *E. Robert Coven*.

For the defendant in error, *J. Vincent Barnitt*.

The opinion of the court was delivered by

Donges, J. The plaintiff in error (hereinafter referred to as the defendant) was convicted of murder in the first degree for the killing of his wife, Lucia Nardella.

The defendant came to this country from Italy in 1910. He returned to that country in 1914, and in 1915 he married the decedent, by whom he had two children before returning to this country in 1920. In 1922 his wife and two children came to this country and lived with defendant,

first at Manlius, New York, and then in Paterson, in this state. Two daughters were born after the wife came to this country. The defendant, with his wife and children, continued to live in Paterson until her death.

From defendant's statements to the authorities, it appears that he became suspicious of his wife and frequently accused her of infidelity. He quarrelled with her, and, on one occasion the quarrel was so violent as to require calling in a justice of the peace to protect the wife and to quiet the defendant. He admitted that for sometime prior to the killing he had determined to kill his wife because he believed her unfaithful to him, although he had no evidence of her infidelity and she vigorously denied his accusations. However, he concluded that the only solution of the situation was to kill her.

The admissions were made to the district attorney of Onondago county, New York (whence he fled after the murder), and to the prosecutor of Passaic county, after he was brought back to this state.

On the day of the murder his wife was trying to persuade him to accompany her to a doctor to have his injured finger treated. His wife was dressing to go with him, and as she leaned over to adjust her stocking or shoe, he struck her in the back of the head with a baseball bat. In his statement, defendant said: "No, I didn't want to go. I said I didn't feel very well. I felt sleepy. 'We will go Monday night.' My wife said, 'No, we will have to go right now.' I said I didn't feel well, once, two or three times. I said, 'I don't feel well.' She caused me to get mad. She got me mad and having the opinion that she was a bad woman, I picked up a baseball bat and hit her on the head." He further said that he intended to kill her. After striking his wife with the bat, he dragged her by the feet down the cellar stairs to the coal bin, where, observing that she was alive, he struck her several times with a coal shovel, which he bent. Then, his wife still breathing, or as he said, "I wasn't sure that she was dead," he secured an axe and struck her with the edge several times, and made sure that she was dead. He then

threw coal on her face and put boards over her body. He then went upstairs, washed bloodstains from the floor, and endeavored to wash bloodstains from his hands and clothing. He talked to his children, but said nothing of his attack upon his wife. He changed his clothing, locked the doors to the coal bin and cellar, and then fled to New York, where he was captured the next day.

He admitted the killing of his wife to the authorities in New York, and in Paterson, and, at the trial, admitted the killing. In his testimony at the trial, in response to the question: "Then what happened, Mr. Nardella, on August 2d?" he replied: "It happened that I killed her. I done the spoils, and give me my medicine and finish it all." "Q. What does that mean? You are sorry? A. Sorry about the poor children in the street, and ruined the whole family, and the whole house, the entire family." The defense was one of insanity.

The case is before us for review on bills of exception and on specifications of causes for reversal on the entire record of the proceedings at the trial, under section 136 of the Criminal Procedure act. *Comp. Stat., p.* 1863. It is not urged that the verdict is against the weight of the evidence.

The first point urged is that the trial judge committed error in that he instructed an interpreter not to give any answers of defendant which included hearsay statements, and that such instructions delegated to the interpreter the judicial function of passing upon the admissibility of testimony.

Of course, the authority to pass upon the admissibility of evidence cannot be delegated by the trial judge to any person. While it is true that the judge did instruct the interpreter not to give any hearsay answers, he did not, in fact, attempt to delegate the duty of saying what answers were admissible. In each instance complained of, the interpreter translated enough of the answer to inform the court of its purport, and the court directed that the answer be not completed. In each instance, the answer was either completed or ruled upon by the court, and counsel for defendant did

not take any exception to such rulings. The record fails to disclose that any testimony offered on behalf of defendant was excluded, but his case was fully and completely presented. If the direction of the judge to the interpreter not to translate hearsay statements was technically erroneous, no harm was done to the defendant because it appears that the court and not the interpreter passed upon the admissibility of the answers. There is no merit in this point.

Point 2 alleges error in refusing to charge as requested as to the law permitting the jury to recommend life imprisonment.

The trial judge read the statute (*Pamph. L.* 1919, *p.* 303) and then, at considerable length, explained the effect of the statute and the power of the jury to make such recommendation. Every essential in the request to charge was charged. When the substance of the request to charge is charged, as in this case, it is not error for the trial judge to refuse to charge the language of the request. *State* v. *Genese*, 102 *N. J. L.* **134.**

Point 3 is that the trial judge erred in reading a part of his charge, theretofore delivered in identical language, to the jury in the absence of the defendant.

The record discloses that the jury had retired to consider the case and to reach a verdict. The jury came into the court room at one-fifty A. M., and the following colloquy occurred:

"Ladies and gentlemen of the jury, I sent for you at this hour of the morning to find out if it is possible for you to agree upon a verdict."

Juror—"We have not agreed."

The court—"Is there anything in the law from which the court can assist you?"

Juror—"Yes, we did send out a note, but we got no reply."

The court—"What is there you want to be refreshed on?"

Juror—"On the cross-examination of Dr. King—the cross-examination, I think it was."

The court—"I'll read the cross-examination to you."

Thereupon, the court read the entire cross-examination of

Dr. King, an expert witness produced by the defendant on the question of his sanity.

The court then read a part of his original instruction to the jury on the question of insanity as a defense.

Exception was taken by defendant's counsel, who were present throughout the proceeding, to the repetition of so much of the charge as was restated, and also to the fact that such restatement was made in the absence of the defendant. No objection was offered in advance of the reading that the defendant was not present. Only the second ground is now urged as error.

The point made is that the presence of the accused is necessary during the whole of the trial; that his presence is not only an inalienable right, but is a jurisdictional requisite which cannot be waived.

The constitution of New Jersey (article 1, section 8) provides: "In all criminal prosecutions the accused shall have the right to a speedy and public trial by an impartial jury; to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the assistance of counsel in his defense." This clause is identical with the one contained in the constitution of the United States, which has been held to refer only to prosecutions in the United States courts.

It has very generally been assumed that no step in a murder trial can proceed in the absence of the defendant. There is apparently no decision in this state upon the question. It has been held that the trial of a person for a crime, not a capital offense, commenced in his presence may be continued in his absence; *State* v. *Peacock,* 50 *N. J. L.* 34; and that, a verdict may be taken in his absence. *Jackson* v. *State,* 49 *N. J. L.* 252. By the common law, an accused charged with an offense the penalty for which was death, must be present when the verdict was rendered. *Jackson* v. *State, supra.* But this applied only to the rendering of the verdict. Likewise a writ of error could not be prosecuted in the absence of the defendant, but it is settled in this state

that his presence is not essential. *State* v. *Donnelly,* 26 *N. J. L.* 463.

It must be conceded that, in a capital case, the better practice is to have the defendant in court at all times during the trial, but the trend of authority in this state and other jurisdictions is that it is not error to reread a portion of the testimony or a portion of the judge's charge in the temporary absence of the defendant. The test is whether anything occurred in his absence that was new to the proceeding and in conflict with his right to be confronted by the witnesses, to be represented by counsel, and to maintain his defense upon the merits.

A case somewhat similar to the instant case is *State* v. *Haines,* 36 *S. C.* 504; 15 *S. E. Rep.* 555, where the defendant on trial for murder was not in the court room when the trial judge had testimony of witnesses already given read over to the jury. The absence of the defendant was urged as ground for reversal. The Supreme Court of South Carolina, in deciding the case on appeal, said:

"The constitution of our state guarantees [and all courts are bound thereunder] to every prisoner the right 'to produce all proofs that may be favorable to him, to meet the witnesses against him face to face, to have a speedy and public trial by an impartial jury, and to be fully heard in his defense by himself or by his counsel, or by both, as he may elect.' Have not all these safeguards of the constitution been fully accorded to the appellant? It seems to us fully. All the proofs he desired he has adduced. The witnesses against him were all sworn and fully examined in his presence, 'face to face.' He has had a speedy trial by an impartial jury. The prisoner has been fully heard by his counsel. This being so, has the prisoner been denied any rights secured to him by any other law? We are constrained to say that he has not. We would be rightly understood in passing upon this matter. Unquestionable, it is the law that a prisoner on trial for crime, except misdemeanors, shall be present at his trial. No step, original in its nature, should occur in the prisoner's absence from the court room. No juror can

be sworn in his absence. No witness can testify in his absence. No new charge from the judge can be given. No step, in fact, which is original in its character. But after the jury have been impaneled; after the testimony has been fully given; after the arguments of counsel are heard; after the judge has charged the jury, and after the jury have retired to make up their verdict—after all these things, if the jury should desire the testimony, or any part thereof, read from the stenographer's notes, or even to have the stenographer to read from his notes the judge's charge, and this should occur in the absence of the prisoner from the court room, it not being original in its character, but merely a repetition of what was original in its character when offered, cannot operate to vitiate the trial. It would, in point of fact, be no more than if copies of these matters were given to them, at their request, before retiring to the jury room in the first instance, and read by the jury there."

It has been repeatedly held by the Supreme Court of the United States that the occasional absence of the accused from the trial, from which no injury resulted to his substantial rights, was not deemed material error and did not amount to a denial of due process within the meaning of the fourteenth amendment of the constitution of the United States. *Howard* v. *Kentucky,* 200 *U. S.* 164; *Frank* v. *Mangum,* 237 *U. S.* 309. In this latter case, Mr. Justice Holmes, in dissenting, agreed with the majority of the court, in holding "we never have been impressed by the argument that the presence of the prisoner was required by the constitution of the United States." No more is his continued presence required by the constitution of our state.

In the instant case nothing new was introduced into the case by a re-reading of a portion of the judge's charge. The defendant was represented by counsel, who were present during the whole proceeding. The defendant's rights were protected in every sense. If the act of the trial judge was held to be technically erroneous, defendant would not be entitled to have the judgment reversed unless he was prejudiced in the submission of his defense upon the merits. In *State* v.

*Yarrow,* 104 *N. J. L.* 512, it was held: "In criminal cases in this state, in addition to the existence of error in law, it must be shown that such error was, or might have been, prejudicial to the defense on the merits." *State* v. *Scott,* 104 *N. J. L.* 544.

Point 4 is that the verdict was illegal.

The ground of attack is that the court and not the jury pronounced the verdict of murder in the first degree. What took place was that the jury returned to the court room and announced that a verdict had been agreed upon. The clerk then asked: "Who shall say for you? Madam Forelady, how do you find?" The forelady: "Guilty." The court: "Guilty of murder in the first degree?" The forelady: ".Yes, your honor." The clerk thereupon polled the jury, as follows: "Juror No. 1, madam forelady, how do you find?" And the juror answered: "Just as I said." The court: "Guilty of murder in the first degree?" Juror No. 1: "Yes." Upon being separately interrogated each juror replied: ".Murder in the first degree."

The jury found the defendant guilty as charged, that is, of murder in the first degree, and it, obviously, was the duty of the court to have a verdict in proper form returned. The judge merely inquired if the juror intended to return a verdict of murder in the first degree. He did not alter or amend it. Each juror plainly announced his or her finding. There was no impropriety in the court's inquiry.

Upon the whole case we conclude that the defendant was afforded a full and fair trial. He was confronted with the witnesses; he was afforded full opportunity to present his defense; he had the benefit of counsel; he was surrounded by every legal safeguard to assure a fair trial in an orderly and deliberate proceeding. We are of opinion that on the trial he suffered no manifest wrong or injury in the admis- mision of testimony, or in the charge of the court, or in any matter touching the conduct of the trial; and that no error intervened which in any wise prejudiced the defendant in maintaining his defense upon the merits.

The judgment below will be affirmed.

*For affirmance*—THE CHIEF JUSTICE, TRENCHARD, PARKER, CAMPBELL, LLOYD, CASE, BODINE, DALY, DONGES, VAN BUSKIRK, KAYS, HETFIELD, DEAR, WELLS, JJ. 14.

*For reversal*—None.