Commonwealth *v.* Meigio, Appellant.

336

Argued April 28, 1941.

Before
KELLER, P. J., BALDRIGE, STADTFELD, RHODES, HIRT
and KENWORTHEY, JJ.

*William A. Gray,* with him *Edward Davis,* for appellant.

*James W. Tracey, Jr.,* Assistant District Attorney, with him *Charles F. Kelley,* District Attorney, for appellee.

OPINION BY BALDRIGE, J., July 2, 1941:

The appellant was indicted, charged in two separate bills of indictment with (1) committing malicious mischief, and (2) conspiracy to commit malicious mischief. The jury rendered a verdict of not guilty on the first indictment and guilty on the second.

The court below overruled defendant's motion for a new trial and imposed a sentence to undergo an im-

prisonment of six months and pay a fine of $300. This appeal followed.

The first position taken by appellant is that his rights were prejudiced by the conduct of a court crier when the jury was deliberating in the jury room. A stipulation of facts was entered into by attorneys for the Commonwealth and defendant, which, in part, reads as follows: "1. Immediately after the jury rendered its verdict in this case and before the verdict was recorded, the above mentioned William A. Gray asked leave to speak to the learned trial judge at side bar as a result of which the learned trial judge and the assistant district attorney and the attorneys for the appellant proceeded to an ante-room adjacent to the court room and at that time and place the above mentioned William A. Gray reported to the court and to the assistant district attorney the fact that the court crier, Charles S. Arnold, had made certain statements to the jury as is more fully explained in the testimony of the said Charles S. Arnold ......"

The learned court below in its opinion refusing a new trial detailed the further essential facts as follows: "It appears that while the jury were deliberating the foreman knocked on the door and asked the tipstaff in charge to call the court crier, who at the moment happened to be standing in the corridor with counsel for the defendant. The tipstaff beckoned to the crier who went and stood in the open doorway. The foreman had in his hands the two bills of indictment and said to the crier:—'Are these two separate charges against this man?' The crier replied:—'Yes, they are.' The foreman said:—'Can we convict on one and not the other?' The crier replied:—'Oh, yes, you may do that.' The crier then told counsel for the defendant what had taken place. Shortly thereafter the jury brought in their verdict."

The trial judge very justly severely condemned the

action of the court crier and stated that he had taken steps that nothing of that sort would occur again. We do not regard the indiscreet conduct above detailed prejudicial to defendant's rights. He and his attorney were present in open court when the charge was delivered. The trial judge, after stating that the defendant was indicted on two separate bills, very clearly instructed the jury that they could convict or acquit on both bills, or convict on one and acquit on the other. The appellant relies on *Commonwealth v. House,* 6 Pa. Superior Ct. 92, and *Commonwealth v. Grove,* 91 Pa. Superior Ct. 553, where we held that a defendant in a criminal prosecution was entitled to be present when any instructions, although they may be free of error, are given to the jury.

The Supreme Court reversed our decisions in the Grove case and in *Commonwealth v. Kelly,* a companion case, 91 Pa. Superior Ct. 559, in *Commonwealth v. Kelly* and *Commonwealth v. Grove,* 292 Pa. 418, 141 A. 246. There after a jury had retired a written communication was sent to the trial judge in his chambers inquiring whether or not the jury could acquit on some counts of indictment and convict on others. The judge wrote a reply on the same paper that either or both defendants could be convicted or acquitted on all or any of the respective indictments except the first. This was not submitted to counsel for defendants, nor was it given to the jury in the presence of defendants or their counsel. In the course of the opinion the former Chief Justice MOSCHZISKER stated: "For a trial judge to communicate any instructions to the jury in the absence of both the prisoner and his counsel is bad practice, and in several cases cited by appellants has been held to be error; but, under the modern view, after a criminal prosecution has ended in a conviction, and the evidence sustains the verdict, even where an error in practice has occurred, an appellate court should not

reverse unless it 'feels not simply that the mistake in question possibly influenced the jury against defendant, but also that it is strongly probable the verdict rendered reflects such adverse influence' (citing cases)."

We are convinced that the occurrence complained of did not harm in the slightest degree this appellant. The answer given by the crier to the query was but a repetition, not any variation, of what the court had already instructed the jury. Mr. Gray had full information of all that occurred. If he had felt that Meigio's rights were thus infringed upon, he no doubt, with characteristic alertness, would have immediately informed the court what had transpired. Apparently he did not then regard the conduct now claimed as prejudicial to the appellant of sufficient importance to take any action. "We have repeatedly held a party may not sit silent and take his chances of a verdict, and then if adverse complain of a matter, which if an error, would have been immediately rectified and made harmless." *Commonwealth v. Yancer*, 125 Pa. Superior Ct. 352, 189 A. 684.

In *Welshire v. Bruaw et al.*, 331 Pa. 392, 200 A. 67, cited by the appellant, there was an application made for a new trial on the ground of the misconduct of a tipstaff in charge of the jury. There the tipstaff indulged in intoxicating liquors during the time the jury was deliberating, entered the jury room on different occasions, inquired of the jury "how they stood" and said he was getting sleepy and wanted to go home. He finally told the jury that the judge wanted to know what they were going to do and asked whether they had agreed upon a verdict. When a negative reply was received he said: "Well, you better get together and get down there at 9:30 or you will get the devil." There were no such coercive measures and otherwise flagrant misconduct in this case. We find no merit to this contention.

The second and last point raised is to the instructions given the jury respecting the meaning of a "reasonable doubt." The trial judge explained in language approved by the Supreme Court what constitutes a "reasonable doubt" and then said further: "I think a reasonable doubt is a doubt you find it is reasonable to have and if you have such a doubt it is your duty to acquit the defendant." The appellant argues that the portion of the charge quoted was tantamount to saying that the jury could not acquit unless they could formulate a reason for so doing.

If this instruction was equivalent to saying to the jury that "a reasonable doubt is a doubt for which you can give a reason" it was erroneous: *Commonwealth v. Harry Weiner,* 101 Pa. Superior Ct. 295, but we do not place such a construction on the language used. The court below aptly states: "If reasonable doubt means anything it means a doubt that it is reasonable to entertain ......" It does not imply that a juror must have a demonstrable reason upon which to base his conclusion. If he has a substantial, as opposed to a fanciful doubt, that is sufficient to acquit a defendant: *Commonwealth v. Drum,* 58 Pa. 9.

Mr. Justice STEPHEN in his "General View of the Criminal Law of England" 2d Edition, p. 192, makes the following statement: "I usually tell a jury that a reasonable doubt means a doubt which they feel it is reasonable to act upon, and that the great object for which they are empanelled is to find out whether they have such doubts or not. I have never thought or heard of a better direction, and I believe that no one ever misunderstands it."

It is a much better and safer practice for a trial judge to follow the definition of "reasonable doubt" which has been approved by the Supreme Court (see *Commonwealth v. Kluska,* 333 Pa. 65, 73, 74, 3 A. 2d 398) rather than attempt to improve the phraseology thereof by

further clarification. Such endeavors give rise to many appeals.

We are not convinced that the judge's charge was inadequate, or erroneous. No other reason than those referred to has been advanced for disturbing the verdict. As they are unavailing the conviction must stand.

The judgment and sentence are affirmed, and it is ordered that the defendant appear in the court below at such time as he may be there called, and that he be by that court committed until he has complied with the sentence or any part of it which had not been performed at the time the appeal in this case was made a supersedeas.