# STATE v. ANTHONY SCHIFSKY.[1]

February 11, 1955.

No. 36,283.

[1]Reported in 69 N. W. (2d) 89.

534

*J. A. A. Burnquist*, Attorney General, *James F. Lynch*, County Attorney, and *John P. Frank* and *Frederick O. Arneson*, Assistant County Attorneys, for the State.

*John S. McGrath* and *D. D. Daly*, for defendant.

NELSON, JUSTICE.

The defendant was convicted of assault in the second degree in the Ramsey county district court. A motion for judgment notwithstanding the verdict or for a new trial was denied January 9, 1953. There has been no appeal from this order. On that date, however, the court stated that it would enter an order certifying certain questions as important and doubtful under M. S. A. 632.10 as follows:

"1. DID THE TRIAL COURT ERR IN ADMITTING certain hearsay evidence such as allowing the deputy sheriffs who testified for the State to testify as to information they received by radio as transmitted to them by the Police Dispatcher from the Public Safety Building of the City of St. Paul, and also err in admitting certain hearsay evidence by the allowing of the playing of recorded records of such radio messages to be played in the court room by a person who was not the person who talked into said recording making said record, and other hearsay evidence all being admitted over the constant objection of counsel for the defendant, * * *.

"2. DID THE TRIAL COURT ERR IN the admission of hearsay declarations of the wife of the defendant, against the defendant in this case, this being a case wherein the defendant was being charged with a crime alleged to have been committed against a third person,

namely, a deputy sheriff of Ramsey County, and not being charged with a crime against the said wife of said defendant; allowing the said declarations of said wife to be testified to by the deputy sheriffs who testified for the State over and above the constant objection of the defendant's attorney; * * *.

"3. DID THE TRIAL COURT COMMIT A PREJUDICIAL ERROR BY:

"a. Communicating with the members of the jury not in the presence of the defendant or his attorneys, while the defendant was incarcerated in the county jail in said case, after the jury had retired for deliberation, without notice to the defendant or the defendant's attorneys, or the State's attorneys, they all being readily available to the court:

"b. Was this a denial of the defendant's rights under the Constitution and the statutes wherein a defendant has an absolute right to be present at every stage of the trial of his case;

"c. And whether or not said action by the court constituted a violation of the substantial rights of the accused so that a fair and impartial trial was not had."

█ The record discloses that the radioed messages were as follows:

To the first squad car:
"647 to the Tony Schifsky residence, Turtle Lake. He has threatened to shoot his wife. He has got a gun."

To the second squad car:
"Run in on that call. Tony Schifsky Residence, Turtle Lake. He has threatened to shoot his wife. He has a gun."

As to questions one and two, it is clear from the record that the testimony was not introduced to prove the truth of the matter stated but only to prove certain verbal acts for the purpose of showing that the deputy sheriffs, who were lawful peace officers, had reasonable cause to believe that a felony had been or was in the process of being committed and that therefore they could, as they did do, make an arrest of the defendant without a warrant.

The state contends that the radio directions from the police dispatcher, coupled with the agitated declarations of defendant's wife,

clearly offered reasonable cause for the deputies' belief that the defendant had committed or was about to commit a felony and that the deputies were therefore justified in entering upon the defendant's premises to arrest him without a warrant. The trial court made it clear when the evidence was received that such testimony was offered only to show that such communications had in fact been made to them and not to establish the truth of anything contained in such communications, and the court charged the jury that, upon their receipt of radioed directions and hearing of the wife's declarations, these deputies were justified in their reasonable belief that defendant had committed a felony.

The hearsay rule applies only to such statements as are sought to be introduced to prove the truth of the facts stated, and it does not apply where the fact that a person not a witness has made a statement is relevant and the statement is introduced merely to prove the fact of its being made and not to prove the truth of what the communication contains. Of course, if the fact that a person not a witness made a statement is in issue, the statement is admissible. All facts in issue are admissible regardless of rules of evidence. 7 Dunnell, Dig. (3 ed.) § 3287; see, 22 C. J. S., Criminal Law, § 718; Lepak v. Lepak, 195 Minn. 24, 261 N. W. 484; Henslin v. Wingen, 203 Minn. 166, 280 N. W. 281; State v. Paun, 109 W. Va. 606, 155 S. E. 656; United States v. Siegel (D. Minn.) 16 F. (2d) 134; Fitzpatrick v. Commonwealth, 210 Ky. 385, 275 S. W. 819; Coleman v. State, 43 Ga. App. 350, 158 S. E. 627.

We conclude that the evidence received under question one as certified was not received as hearsay evidence. It was in fact primary and original evidence used to show that the deputies had reasonable cause to believe a crime had been or was about to be committed and to arrest without warrant, and therefore the court did not err in permitting the recorded messages to be played before the jury. Section 629.30 states the authority of the deputies to arrest

without a warrant.[2] Section 629.35 provides for arrests without a warrant to be made at night under certain circumstances.[3]

The state has contended in its brief that the declarations of the wife were admissible to prove the truth of the matter contained in them because they come within the exception to the hearsay rule known as the *res gestae* rule. The declarations were not admitted at the trial for this purpose. They were admitted only for the limited purpose described above, and the question certified to this court is whether their admission for that purpose was proper and not whether the *res gestae* rule was applicable. In answering that question it is not necessary to consider the separate question of whether the *res gestae* rule was applicable.

The statute authorizing the trial court to certify important or doubtful questions is not a substitute for appeal and does not raise the general question whether the evidence shows or proves the defendant guilty, which is reviewable on appeal from an order denying a new trial or from the judgment. State v. Dumas, 118 Minn. 77, 136 N. W. 311, 41 L.R.A.(N.S.) 439.

■ The record further shows that certain declarations were made by defendant's wife directed to the deputies and not in the presence of the defendant, her husband, and testimony as to what she said to them is as follows:

"Her husband had a gun and had threatened to shoot her," and "Her husband had a long gun. You must take him, he is out to get me."

---

[2]Under this statutory authority a peace officer may, without warrant, arrest a person for a public offense committed or attempted in his presence or upon a charge made upon reasonable cause of the commission of a felony by the person arrested.

[3]§ 629.35. "Such peace officer may at night, without a warrant, arrest any person whom he has reasonable cause for believing to have committed a felony, and shall be justified in making such arrest, though it shall afterwards appear that no felony has been committed; but when so arresting a person without a warrant, the officer shall inform him of his authority and the cause of the arrest, except when he shall be in the actual commission of a public offense, or shall be pursued immediately after an escape."

538

The information of the county attorney charged the defendant with assault in the second degree.[4]

The defense contends that the declarations of defendant's wife to the effect "Her husband had a gun and had threatened to shoot her," and "Her husband had a long gun," and "You must take him, he is out to get me," are inadmissible by reason of the disqualification of the wife contained in § 595.02, insofar as here applicable:

"Every person of sufficient understanding, including a party, may testify in any action or proceeding, civil or criminal, in court or before any person who has authority to receive evidence, except as follows:

"(1) A husband cannot be examined for or against his wife without her consent, nor a wife for or against her husband without his consent, nor can either, during the marriage or afterwards, without the consent of the other, be examined as to any communication made by one to the other during the marriage. This exception does not apply to a civil action or proceeding by one against the other, nor

---

[4]Assault in the second degree is provided by statute to be a lesser degree of assault than in the first degree, both defined as follows:

§ 619.37. "Every person who, with intent to kill a human being or to commit a felony upon the person or property of the one assaulted or of another:

"(1) Shall assault another with a loaded firearm or any other deadly weapon, or by any force or means likely to produce death; * * *

\* \* \* \* \*

"Shall be guilty of assault in the first degree, * * *."

§ 619.38. "Every person who, under circumstances not amounting to assault in the first degree:

\* \* \* \* \*

"(4) Shall wilfully and wrongfully assault another with a weapon or other instrument or thing likely to produce grievous bodily harm; or

"(5) Shall assault another with intent to commit a felony, or to prevent or resist the execution of any lawful process or mandate of any court, or officer, or the lawful apprehension or detention of himself or of any other person—

"Shall be guilty of an assault in the second degree, * * *."

to a criminal action or proceeding for a crime committed by one against the other, * * *."[5]

A witness, of course, is one who has been sworn according to law and deposes as to his knowledge of facts in issue upon trial of a case; testimony means the statement made by the witness under oath in the trial of a case or in a legal proceeding. See, Webster's New International Dictionary (2 ed.) (1947); 2 Bouvier's Law Dictionary; Poe v. State, 95 Ark. 172, 129 S. W. 292.

The testimony to which objection is made here was offered by the deputies as witnesses and not by the wife. The declarations were made by defendant's wife to the deputy sheriffs suggestive of needed protection from the officers of the law. It was the deputy sheriffs who offered testimony as to those declarations. The declarations testified to by the deputies were made to them by the defendant's wife and were not made by her to the defendant nor in the defendant's presence. The statute operates only to protect the spouses against each other; it does not prevent a third-party witness from testifying as to communications between the spouses. As has been said, the presence of a third party not visible to a husband or wife will prevent either of them from testifying against the objection of the other but will not prevent the eavesdropper from appearing. 13 Minn. L. Rev. 675, 681, citing Commonwealth v. Griffin, 110 Mass. 181, and Ray v. State, 38 Ga. App. 202, 143 S. E. 603; Hudson v. State, 153 Ga. 695, 697, 113 S. E. 519, 520; Sims v. State, 36 Ga. App. 266, 136 S. E. 460. The court admitted this testimony but clearly stated that it was allowed only to show the fact of the statement being made and not to prove the truth of the contents and to show the conduct of the defendant in connection with proof of justification for arresting him at the time without a warrant.

Our conclusion that the court did not err in permitting the deputies to testify to the declarations of the defendant's wife, Mrs. Schifsky, is in the first place based on the reasoning that the decla-

---

[5]"Witness" is defined in § 595.01:

"A witness is a person whose declaration under oath is received as evidence for any purpose, whether such declaration is made on oral examination, or by deposition or affidavit."

rations were not hearsay because they were introduced as primary and original evidence to show reasonable cause to make an arrest without a warrant; that the declarations of the wife under the circumstances were not privileged communications between husband and wife; and that Mrs. Schifsky did not testify against her husband as she was not a witness at the trial as has been defined by statute but the testimony admitted was that of third-party witnesses, not of Mrs. Schifsky. We hold that this evidence was admissible for the purpose stated for the reason that the statute relates only to testimony under oath by the spouse as a witness in a judicial proceeding. Neither was it objectionable on the ground that it was hearsay nor upon the ground that the wife was an incompetent witness against the husband. See, State v. Armstrong, 4 Minn. 251 (335); State v. Feste, 205 Minn. 73, 285 N. W. 85; Gjesdahl v. Harmon, 175 Minn. 414, 221 N. W. 639; State v. Frey, 76 Minn. 526, 79 N. W. 518.

■ As to the third question certified, the state concedes that any communication by a court to a jury having to do with the trial without the defendant or his attorney being present is error. What must be determined is whether there was such error here as to substantially prejudice the defendant's constitutional and statutory rights to the extent that he was deprived of a fair and impartial trial.

The trial of this case was long, running better than three weeks. The jury began its deliberations in the afternoon of December 8 at 2 p. m., and at 5:30 p. m. the same day the foreman of the jury submitted the following question in writing to the bailiff who delivered it to the judge who was on duty: "Can we have a copy of the Court's charge, or can you answer whether or not a conviction can be made if the gun was discharged accidentally irrespective of other convicting factors, knowing that Fournelle was a sheriff legally performing his duty?"

Upon receipt of this request from the jury, the court ordered the jury to report back to the courtroom, having them take their places in the jury box in the presence of the bailiffs, the clerk, and the court reporter when the following transpired:

"THE COURT: Ladies and Gentlemen of the Jury. You have submitted two questions. The first question is: can we have a copy of the Court's charge? The answer is no: Our Supreme Court has held for some unaccountable reason that you may not have the written charge of the judge but he may re-read portions of his charge and I will now read that portion of the charge which answers your second question.

" 'Before you can convict this defendant of the crime charged, namely, assault in the second degree, you must find beyond a reasonable doubt: first, that the defendant intentionally shot Officer Fournelle; second, that he did so in resisting a lawful arrest as I have defined it.'

"Does that answer your question?

"THE JURY: YES."

The communication with the jury, by the court, took place in open court in the courtroom with the bailiffs, clerk, and reporter present. Neither the prosecuting attorneys nor defendant or his attorney were present, and the above took place while the defendant was in custody in the county jail.

Under our decisions, and we believe now under the decisions of this country generally, it has become a fundamental rule of modern appellate procedure that in order to warrant a reversal and the granting of a new trial, both in civil and criminal cases, the error complained of must have been prejudicial to the substantial rights of the appellant. 3 Am. Jur., Appeal and Error, § 1003; 5 Dunnell, Dig. (3 ed.) § 2490.

We have, in this state, a statute which provides that a trial shall not be affected by reason of a defect or imperfection in matter of form which does not tend to the prejudice of the substantial rights of the defendant upon the merits. § 628.19.[6] This court, in 1881,

---

[6]Section 628.19 provides that formal defects may be disregarded:

"No indictment shall be insufficient, nor shall the trial, judgment, or other proceedings thereon be affected, by reason of a defect or imperfection in matter of form which does not tend to the prejudice of the substantial rights of the defendant upon the merits."

decided the case of Oswald v. Minneapolis & N. W. Ry. Co. 29 Minn. 5, 11 N. W. 112, reversing and completely overthrowing the strict rule laid down in the early case of Hoberg v. State, 3 Minn. 181 (262), that any communication in the absence of the defendant was reversible error. Since the time of the Oswald decision, we have followed the present prevalent rule that the defendant must be prejudicially injured before such error is reversible.

The rule of the "harmless error statute" has been called a salutary one, but it is also one that must be liberally construed and applied on motions for a new trial so that an accused person, however clear may be his guilt, is entitled to a fair trial and a trial according to law, free, not from all error, but from substantial error. Chalmers v. Whittemore, 22 Minn. 305; Koehler v. Cleary, 23 Minn. 325; Moran v. N. P. Ry. Co. 225 Minn. 373, 31 N. W. (2d) 37; State v. Brodt, 150 Minn. 431, 185 N. W. 645; State v. Broughton, 154 Minn. 390, 192 N. W. 118; State v. McReady, 154 Minn. 366, 191 N. W. 816; State v. Kraus, 175 Minn. 174, 220 N. W. 547; State v. Soltau, 212 Minn. 20, 2 N. W. (2d) 155; State v. Kruse, 137 Minn. 468, 163 N. W. 125; Helmbrecht v. Helmbrecht, 31 Minn. 504, 18 N. W. 449; State v. Nelson, 91 Minn. 143, 97 N. W. 652; State ex rel. Shetsky v. Utecht, 228 Minn. 44, 36 N. W. (2d) 126, 6 A. L. R. (2d) 988; State v. Gorman, 113 Minn. 401, 129 N. W. 589, 32 L.R.A.(N.S.) 306; State v. Bragdon, 136 Minn. 348, 162 N. W. 465; State v. Staveneau, 158 Minn. 329, 197 N. W. 667.

There are certain statutory and constitutional provisions which must be considered in connection with the certification of question No. 3. Minn. Const. art. 1, § 6, provides:

"In all criminal prosecutions the accused shall enjoy the right to a speedy and public trial, by an impartial jury * * * to be confronted with the witnesses against him, * * * and to have the assistance of counsel in his defense."

Minn. Const. art. 1, § 7, provides:

"No person shall be held to answer for a criminal offense without due process of law, * * *."

Section 631.01, requiring the appearance of defendant in person during trial if the charge be that of a felony or gross misdemeanor, provides:

"An issue of fact arises upon a plea of not guilty, or upon a plea of former conviction or acquittal of the same offense. * * * If the charge against the accused be a misdemeanor, the trial may be had in the absence of the defendant, if he shall appear by counsel; but, if it be for a felony or gross misdemeanor, he shall be personally present."

Section 631.11 provides that the jury may return into court for information:

"After the jury has retired for deliberation, if there shall be a disagreement as to any part of the testimony, or a desire for information upon any point of law arising in the cause, it may require the officer to conduct it into court. Upon being brought into court, the information required shall be given in the presence of, or after notice to, the prosecuting officer and the defendant or his counsel."

As to the subject of "communication between court and jury," we would say that the general rule is that no communication whatever ought to take place between judge and jury after the cause has been presented to them by the charge of the court unless in open court and, where practicable, in the presence of counsel involved in the litigation, and in criminal cases in the presence of the defendant. The public interest requires that parties to lawsuits or defendants on trial should have nothing to complain of or suspect in the administration of justice. This general rule, however, is subject to the modification that such communications must be shown to have been substantially prejudicial to the defendant or the situation such that there is reasonable suspicion of harm having come to the defendant or appellant thereby. Only a few jurisdictions remain that follow the strict rule that any communication is error whether prejudicial or not and that such error is cause for reversal. The majority of modern decisions follow the trend of liberalizing the rule to the

extent that, if error is not prejudicial, then a new trial ought not to be granted or a judgment reversed.

The present prevailing rule seems to be to look into the effect of the error in each particular case rather than to consider abstractly the general error of the act of communicating with the jury other than in open court and in the presence of defendant and his counsel, and reversal will not be ordered unless it is shown that prejudice resulted. A very common test which has been applied to a variety of situations is whether or not the error affected the result; if it did not, it is not reversible error. 3 Am. Jur., Appeal and Error, § 1007. A prejudicial error has been defined as an error which affected the final result of the case and was prejudicial to a substantial right of the party assigning it. State v. Britton, 27 Wash. (2d) 336, 341, 178 P. (2d) 341, 344. Authorities from other jurisdictions adopting the rule regarding communications between court and jury in the absence of the defendant that reversal will not be granted if such communication was in no manner prejudicial are: Kimmins v. City of Montrose, 59 Colo. 578, 151 P. 434; Dodge v. United States (2 Cir.) 258 F. 300, certiorari denied, 250 U. S. 660, 40 S. Ct. 10, 63 L. ed. 1194; State v. Nardella, 108 N. J. L. 148, 154 A. 834; Commonwealth v. Kelly, 292 Pa. 418, 141 A. 246; United States v. Graham (2 Cir.) 102 F. (2d) 436; Robertson v. State (Okl. Cr.) 250 P. (2d) 62; Commonwealth v. Meigio, 145 Pa. Super. 335, 20 A. (2d) 907; Commonwealth v. Shadduck, 168 Pa. Super. 376, 77 A. (2d) 673; Commonwealth v. Knable, 369 Pa. 171, 85 A. (2d) 114; People v. Alcalde, 24 Cal. (2d) 177, 148 P. (2d) 627; Rafferty v. People, 72 Ill. 37; People v. Brothers, 347 Ill. 530, 180 N. E. 442; People v. LaMunion, 64 Mich. 709, 31 N. W. 593; People v. Jaskulski, 236 Mich. 237, 210 N. W. 234; People v. Carnel, 2 Edmonds (N. Y.) 202; People v. Gaffney, 1 Sheldon (N. Y.) 304; People v. Draper, 28 Hun (N. Y.) 1; People v. Silverman, 252 App. Div. 149, 297 N. Y. S. 449; Whittaker v. State, 173 Ark. 1172, 294 S. W. 397; Dunbar v. Commonwealth, 192 Ky. 263, 232 S. W. 655; Wireman v. Commonwealth, 212 Ky. 420, 279 S. W. 633; State v. Costales, 37 N. Mex. 115, 19 P. (2d) 189; State v. Borchert, 68 Kan. 360, 74 P. 1108; State v. Thyer, 143 Kan. 238, 53 P. (2d) 907; Walker v. State, 223 Ala. 294, 135 So.

438; Hackbarth v. State, 201 Wis. 3, 229 N. W. 83; Dishmaker v. Heck, 159 Wis. 572, 150 N. W. 951; Quinton v. State, 112 Neb. 684, 200 N. W. 881; State v. Verde, 66 R. I. 33, 17 A. (2d) 39; State v. Colson, 9 Wash. (2d) 424, 115 P. (2d) 677; Cartwright v. State, 97 Tex. Cr. 230, 259 S. W. 1085. Although where the record is silent as to the possibility of harm, a presumption generally favors the defendant and a new trial is granted. 37 Minn. L. Rev. 408.[7]

Was the defendant deprived of his constitutional right of due process of law? It seems clear that defendant referred not only to the Minnesota constitution and articles heretofore quoted but also to the due process clause under the federal constitution and the Sixth Amendment.[8]

Leading criminal cases on what constitutes due process under U. S. Const. Amend. XIV are: Snyder v. Massachusetts, 291 U. S. 97, 54 S. Ct. 330, 78 L. ed. 674, 90 A. L. R. 575; Hurtado v. California, 110 U. S. 516, 4 S. Ct. 111, 292, 28 L. ed. 232.

This court has held that it will follow in construing Minn. Const. art. 1, § 7, the decisions of the United States Supreme Court in its construction of U. S. Const. Amend. XIV, both containing due process clauses. See, State v. Northwest Airlines, Inc. 213 Minn. 395, 7 N. W. (2d) 691, affirmed, 322 U. S. 292, 64 S. Ct. 950, 88 L. ed. 1283.

The effect of U. S. Const. Amend. XIV is to make the federal supreme court the final arbiter as to what constitutes due process of

[7]Little v. United States (10 Cir.) 73 F. (2d) 861, 96 A. L. R. 889; La Guardia v. State, 190 Md. 450, 58 A. (2d) 913; Graham v. State, 73 Okl. Cr. 337, 121 P. (2d) 308; Lowrey v. State, 87 Okl. Cr. 313, 197 P. (2d) 637; Ray v. State, 207 Ind. 370, 192 N. E. 751; Miller v. State, 13 Ga. App. 440, 79 S. E. 232.

[8]U. S. Const. Amend. XIV, § 1: "* * * No state shall make or enforce any law which shall abridge * * *; nor shall any state deprive any person of life, liberty, or property without due process of law, * * *."

U. S. Const. Amend. V: "No person shall be held to answer * * * nor be deprived of life, liberty, or property, without due process of law; * * *."

U. S. Const. Amend. VI: "In all criminal prosecutions the accused shall enjoy the right to a speedy and public trial by an impartial jury * * *; to be confronted with the witnesses against him; * * * and to have the assistance of counsel for his defense."

law. 3 Dunnell, Dig. (3 ed.) § 1640. In Snyder v. Massachusetts, *supra,* the error relied upon for reversal had to do with the jury viewing a scene without the defendant being present, but the reasoning in that case is helpful here. The court in that case said (291 U. S. 107, 54 S. Ct. 333, 78 L. ed. 679) :

"* * * So far as the Fourteenth Amendment is concerned, the presence of a defendant is a condition of due process to the extent that a fair and just hearing would be thwarted by his absence, and to that extent only."

See, also, State v. Rogers, 145 Minn. 303, 177 N. W. 358.

We are unable to find from the record that the defendant was prejudicially harmed by what the court did from the standpoint of violating any constitutional or statutory rights of the defendant. The re-reading or repeating of a part of the original instructions by the court to the jury not in the presence of the defendant and in the open courtroom before the clerk, the court reporter, and the bailiffs, is not prejudicial error of such degree as to necessitate reversal since the record does not disclose prejudice.

This was not a case where either the judge or some third person wandered into the jury room and communications were had that remained unreported. While the defendant should have been notified and have had the opportunity to be present in court, yet the trial was over; the jury was in the midst of its deliberations; and no new charge of any kind or nature was given, only a repetition of a part that had been given before and which was entirely favorable to the defendant. While it was error to proceed without the presence of the defendant, such error in the instant case is without prejudice to the rights of the defendant, it was harmless, and it therefore does not justify a reversal.

The questions certified are accordingly answered in the negative.