## STATE v. FRANK BRODT.[1]

### December 9, 1921.

### No. 22,405.

**Trial — judge's question to jurors not improper.**

1. There was no impropriety in an inquiry made by the trial judge and addressed to the jurors during an intermission in the trial to ascertain their preference as to the time when the case should be submitted to them. As a rule only private communications between the judge and

[1]Reported in 185 N. W. 645.

jury, which are had after the case has been submitted, are *held* to be improper.

**Trial — reference by judge to expense for jurors' fees.**

2. Defendant cannot complain because, in granting his request for an adjournment before the usual hour, the trial judge referred to the expense the county was incurring for jurors' fees.

**Defendant's letter admissible to show guilty knowledge.**

3. Defendant's letter to one of the men who had sold stolen automobile tires to him, saying he would take all the tires he could bring, was properly received in evidence as tending to show guilty knowledge when he purchased the tires described in the indictment.

**Defendant's assertion admissible in evidence.**

4. A statement by defendant, after his arrest, with reference to the number of tires he had purchased and the price paid was properly received in evidence.

**Letter admissible because of cross-examination of writer.**

5. By cross-examining the witness for the state, about a statement purporting to appear in a letter concerning the defendant which the witness had written, the entire letter became admissible to show that the alleged statement had not been made.

Defendant was indicted by the grand jury of Dakota county charged with the crime of buying and receiving stolen property, tried in the district court for that county before Converse, J., and a jury, and found guilty as charged in the indictment. From an order denying his motion for a new trial, defendant appealed. Affirmed.

*William J. Quinn,* for appellant.

*Clifford L. Hilton,* Attorney General, *James E. Markham,* Assistant Attorney General, and *Alfred E. Rietz,* County Attorney, for respondent.

LEES, C.

Defendant was convicted of the crime of buying and receiving stolen property, and appealed from an order denying a new trial. He does not question the sufficiency of the evidence to sustain the verdict of the jury.

1. After the evidence was all in, the court ordered an afternoon recess. During the recess the trial judge entered the jury room where

some of the jurors were, and asked the other jurors who were in the corridor of the court house to come in. When all the jurors were present he asked them whether they preferred to have the case submitted to them that evening or the next morning. They replied that they preferred to have it go over until morning. When the trial was resumed the court announced that, as a result of a conference with the jury, an adjournment would be taken until the following morning. This incident is the basis of defendant's first complaint. He contends that a trial judge cannot have any communication with the jury, except in open court in the presence of the parties or their attorneys, citing Hoberg v. State, 3 Minn. 181 (262), to support the contention. In that case the trial judge visited the jurors after they had retired to consider their verdict, and had communication with them apart from and without the consent of the defendant or his counsel. Obviously the situation presented was entirely different from that which arose here. Crabtree v. Hagenbaugh, 23 Ill. 349, 76 Am. Dec. 694, and Read v. City of Cambridge, 124 Mass. 567, 26 Am. Rep. 690, are also cited. Each case dealt with private communications between the trial judge and the jury, after the case had been submitted to the jury. Such communications are generally condemned. Sargent v. Roberts, 1 Pick. (Mass.) 337, 11 Am. Dec. 185; Havenor v. State, 125 Wis. 444, 104 N. W. 116, 4 Ann. Cas. 1052; Dodge v. United States, 258 Fed. 300, 169 C.C.A. 316, 7 A.L.R. 1510; 16 C. J. p. 1090. Here the communication was immediately brought to the attention of the parties, had nothing to do with the issue on trial, took place before the case had been submitted to the jury, and by no stretch of the imagination can prejudice to the defendant be imputed to the incident. See State v. Bragdon, 136 Minn. 348, 162 N. W. 465; State v. Kruse, 137 Minn. 468, 163 N. W. 125.

2. When the state rested, defendant's counsel asked for an adjournment in order to prepare certain motions and submit authorities. The court granted the request reluctantly, saying that counsel should be ready to go on with the trial of their cases, that the county was at an expense of $150 a day for jurors and that there were other cases to try. These remarks are complained of, but we are wholly at a loss to

discover the slightest impropriety in them or to see how defendant could have been prejudiced by them.

3. The stolen property consisted of automobile tires which Joseph Wasser and Thomas Mullaney had sold to defendant. They had pleaded guilty to a charge of having stolen the tires. Over defendant's objection, a letter he had written to Mullaney was received in evidence. It was written after he had purchased the tires. It read in part as follows:

"Bring all the tires you can. Will take them. I am working on the merchandise and will let you know later about that, but I want the other stuff right away. Wire me if you will come so I won't be off hunting."

Mullaney was not a dealer in tires. His last occupation, so far as the record shows, was working in a pool-room. He lived at Hastings and defendant at South St. Paul. Defendant knew him. His request for more tires was competent evidence, for it tended to show defendant's guilty knowledge in connection with the purchase from Wasser and Mullaney of the tires they had stolen.

4. Defendant testified in his own behalf that he bought five tires from Wasser and Mullaney for $195. They testified they sold him nine tires for $195. In rebuttal the state called the justice of the peace, by whom defendant was committed for trial, and, over objection, he testified that when defendant was brought before him he said he bought five tires from Wasser and Mullaney for $75. This bore on the question of defendant's good faith in making the purchase. If he bought nine instead of five tires of the kind described in the testimony, the jury might properly infer that the price paid was so small that he must have known the tires were stolen.

5. Wasser testified that, after the defendant bought the tires, he sold one of them back to him to use on a Dodge car he was driving. Some time after he bought this tire, Wasser was arrested and confined in the county jail at Duluth. While there he wrote a letter to his brother at Hastings. In cross-examining him, defendant's counsel inquired about statements he had made in the course of an interview with him. He was asked whether he wrote to anyone about the tire in question, and he answered that he had written to his brother. Asked whether he had

the letter with him, he said he had, and at counsel's request handed it to him. He was asked when he wrote the letter saying he wanted to "get" defendant; also whether he still wanted to "get" him; also whether he had not written the letter because he wanted to "get" defendant. On his redirect examination he identified the letter and it was offered in evidence. Defendant objected on several grounds, one that counsel had not gone into its contents. The court ruled that by the cross-examination a portion of the alleged contents of the letter had been brought out and that the whole of it ought to be placed before the jury, and it was received and read to the jury.

In this letter Wasser wrote that he had bought a tire from defendant; that when he bought it defendant told him it was one of the tires he and Mullaney had sold him; that defendant had the serial number on the tire destroyed and the word "second" burned over it so as to protect himself if Engel should see the tire on the Wasser car; that he wished he had never seen defendant, for, if he had not, he would not be in trouble. The letter ended with a request that the tire be taken off the car as defendant would remember it as it would be good evidence against the writer. Engel, referred to in the letter, was proprietor of a garage at Hastings and the tires had been stolen from him. The tire referred to in the letter was brought into court and received in evidence. It appeared that the word "second" had been burned in on the side. Wasser testified that this was done in South St. Paul at defendant's direction when he bought the tire from him.

The admission of the letter presents the only doubtful question in the case. Defendant's counsel sought to bring out by cross-examination of Wasser that he was filled with hatred of defendant and was anxious to "get" him or have him convicted. The cross-examination would naturally lead the jury to infer that there were expressions in the letter indicating such a desire. Such was not the fact. Of course the letter was not admissible as independent evidence of defendant's guilt, but, under the circumstances, we think it was admissible to clear up the jury's possible misapprehension of the facts. When the significance of a former statement of a witness has been distorted by a fragmentary or inaccurate repetition of it, the entire conversation or writing may be

received to explain its true significance. 2 Wigmore, Ev. § 1045; Lombard v. Chaplin, 98 Me. 309, 56 Atl. 903; Wilkerson v. Eilers, 114 Mo. 245, 21 S. W. 514.

We are satisfied that defendant had a fair trial and that his conviction should be sustained. The order denying a new trial is, therefore, affirmed.