STATE, BY MILES LORD, ATTORNEY GENERAL, v.
ANTON WINIECKI AND OTHERS.
OTTO J. TRUHLER, APPELLANT.

115 N. W. (2d) 724.

June 15, 1962—No. 38,460.

*Neumeier, Rheinberger, Eckberg & Kimmel,* for appellant.

*Walter F. Mondale,* Attorney General, *Rolf O. Slen,* Deputy Attorney General, and *Gerald H. Geheren* and *Donald J. Paquette,* Special Assistant Attorneys General, for respondent.

THOMAS GALLAGHER, JUSTICE.

Condemnation proceedings by the state to acquire 2.03 acres and certain access rights for Trunk Highway No. 393 in lands in Ramsey County owned by appellant, Otto J. Truhler. The property involved has been designated as parcel 212 in the proceedings.

Commissioners appointed by the district court awarded damages to appellant in the sum of $12,625, of which $2,000 was for the land taken and $10,625 for resulting damages to the lands not taken. Appeals to the district court from this award were taken by both the state and appellant. The jury returned a verdict for appellant for $6,200, of which $3,000 was for the land taken and $3,200 was for the damages to the land not taken.

During the trial Gordon C. Elmquist, a real estate expert, was called by the state to give testimony as to the reasonable market value of

the lands and interests which the state sought to acquire. In his cross-examination, it was elicited that he had submitted a written appraisal to the state on April 12, 1960, and a previous written appraisal to it on November 20, 1959. In the appraisal of April 12, 1960, the witness had reported a higher value as to the property to be taken than he had reported in the appraisal of November 20, 1959. In the cross-examination with reference thereto the following occurred:

"Q.   [By Mr. Rheinberger, counsel for appellant] Did you submit a * * * written appraisal report to the state?

"A.   Yes, sir.

\*     \*     \*     \*     \*

"Q.   May I see it? It is April 12, 1960 the date you submitted your appraisal to Mr. Geheren [counsel for the state], did you submit any previously?

"A.   To the Division of Lands and Rights-of-way.

"Q.   When?

"A.   November 20th [1959].

"Q.   You don't have a copy of that report, do you?

"Mr. Geheren: I think this is shown here, isn't it? It's right here.

"Q.   Let me ask you this, wasn't the report you submitted in November of 1959 the same identical report you have submitted to Mr. Geheren on April 12, 1960?

"A.   No, sir.

"Q.   In what respect did it differ?

"A.   * * * after submitting that report I * * * got to looking that report over and thinking about it and made the further review that I made about two weeks ago after considering the report that I had turned in. * * * I turned in this other report and allowed for certain damages I had not considered originally.

\*     \*     \*     \*     \*

"Q.   Up to the time you knew you were to be a witness in court what was the occasion for making a revised appraisal?

"A.   * * * I had heard I had no reason to believe that this would come up on the state, but I had heard that it potentially might come up on the stand and I have checked through it.

"Q. Unless the State requested you go ahead and revise you[r] appraisal there would be no reason for doing it, would there?

"A. * * * if I felt I had information * * * as regarding * * * certain land that might be sold that * * * would maybe make my report or my thinking would I want to stand behind the report * * *.

"Q. Well, would you say that you made your first report improperly?

"A. I would not say I made the first report improperly. I think that I have stated to you I overlooked certain information that I included in this report.

"Q. Are you satisfied you haven't overlooked certain information you have not included in your report of April 12th?

"A. I am quite satisfied.

* * * * *

"Q. What did you overlook in your appraisal of 1959?

"A. Certain land sales, comparable land sales.

"Q. Is that all?

"A. That is all.

"Q. Are your figures then the same?

"A. They were the same except for the valuation of the land.

"Q. The valuation of the land I take it was lower or higher [than] you submitted in 1960?

"A. The valuation was lower and I obtained information as to certain sales that led me to believe that land should be higher than I had it in the previous report."

Following this cross-examination counsel for the state, in redirect examination, undertook to introduce in evidence the appraisal report of April 12, designated state's exhibit C, which included some material contained in the report of November 20, 1959. Therein the witness had first set forth in detail some eight sales of land in the vicinity of appellant's properties, including the names of the grantors and grantees, the legal descriptions, and the selling prices of the different prcperties involved. Later, in the report dated April 12, 1960, he had set forth five additional sales of land with the same information with respect thereto that was included in the prior report. The reception of this

exhibit in evidence was strenuously objected to by counsel for appellant as indicated by the following:

"Q.  [By Mr. Geheren for the state] Showing you this instrument marked State's Exhibit C, will you tell me what that is?

"A.  It is a report, yes, an appraisal report on the property we have been talking about.

"Q.  Is that identical with the instrument there before you, is that the same as the other?

"A.  As this one?

"Q.  Yes.

"A.  Identical.

*   *   *   *   *

"Q.  This is the one counsel asked you the questions from?

"A.  Yes.

*   *   *   *   *

"Mr. Geheren: * * * this is your signature on it?

"A.  Yes, sir.

"Q.  And this is your appraisal?

"A.  Yes, sir.

"Mr. Geheren: State then offers State's Exhibit C, an appraisal made by Mr. Elmquist.

"Mr. Rheinberger: Objected to as not the best evidence, his testimony is the best evidence; irrelevant and immaterial.

"The Court: Received.

*   *   *   *   *

"The Court: You went into it; you were the one that brought it out.

"Q.  Referring to State's Exhibit C, will you refer to the comparable sales you have used and shown in the appraisal, start with the industrial lands?

*   *   *   *   *

"Mr. Rheinberger: Just a minute, please, it is objected to as not proper redirect examination. It was not brought out on cross-examination.

"The Court: Overruled."

Following this the witness was permitted to testify over objection as to the sales described in the report and to point out where the lands involved were located and relate details as to sewage disposal, gas lines, water lines, comparable topography, and other data with respect thereto.

On appeal the sole contention made is that the court erred in receiving the appraisal report and testimony with respect to the sales set forth therein, on the ground that such sales had not been gone into in the cross-examination and hence both the report and testimony with respect thereto were inadmissible.

■ It is well settled that in condemnation proceedings the consideration paid for other property, even when adjacent to the tract involved, and evidence with reference to sales prices involved in recent sales in the vicinity is inadmissible as substantive proof of the reasonable market value of the lands involved in the condemnation proceedings. Stinson v. Chicago, St. P. & M. Ry. Co. 27 Minn. 284, 6 N. W. 784; Board of Education v. Heywood Mfg. Co. 154 Minn. 486, 192 N. W. 102; Minneapolis-St. Paul Sanitary Dist. v. Fitzpatrick, 201 Minn. 442, 277 N. W. 394, 124 A. L. R. 897. The basis for the rule is readily understood. It is very seldom that two properties are alike in every respect, so that the price paid for one would be a clearcut indication as to the reasonable market value of the other. The surrounding circumstances, the reasons for the sale or purchase, and many other factors may affect the sales price of the one but in no way affect the value of the other. It is clear that here unless the challenged evidence became admissible because of questions asked by opposing counsel on cross-examination, neither the written appraisal report nor the oral testimony with respect thereto was admissible.

■ In support of the trial court's reception of this evidence, the state relies upon certain well-established principles which were expressed in State v. DeZeler, 230 Minn. 39, 45, 41 N. W. (2d) 313, 318, 15 A. L. R. (2d) 1137, as follows:

"* * * Did defendant by his cross-examination open the door to its admission when it [coroner's death certificate] would otherwise have been inadmissible? Defendant's cross-examination, by implica-

tion and otherwise, cast doubt upon the qualifications of the coroner
* * *. The state had the right upon redirect examination to intro-
duce the death certificate to rehabilitate the witness as to his qual-
ifications and proper conduct. Where one party introduces inadmis-
sible evidence, he cannot complain if the court permits his opponent
in rebuttal to introduce similar inadmissible evidence."

The state likewise relies on State v. Brodt, 150 Minn. 431, 185 N. W.
645, wherein a witness had been cross-examined with respect to a
letter he had written previously and which opposing counsel had held
in his hand during the cross-examination. On redirect examination,
the letter was offered and received in evidence over objection that
its contents had not been gone into in the cross-examination. In uphold-
ing the reception of the letter in evidence, this court stated (150 Minn.
435, 185 N. W. 647):

"* * * Defendant's counsel sought to bring out by cross-examina-
tion of Wasser that he was filled with hatred of defendant and was
anxious to 'get' him or have him convicted. The cross-examination
would naturally lead the jury to infer that there were expressions in
the letter indicating such a desire. Such was not the fact. Of course
the letter was not admissible as independent evidence of defendant's
guilt, but, under the circumstances, we think it was admissible to clear
up the jury's possible misapprehension of the facts. When the sig-
nificance of a former statement of a witness has been distorted by
a fragmentary or inaccurate repetition of it, the entire conversation
or writing may be received to explain its true significance."

■ These references make clear that it is only where cross-exami-
nation by opposing counsel has discredited a witness by suggesting
or implying that he has given false or distorted testimony differing
from that contained in some document, referred to in the cross-exam-
ination, and to which he is a party; or where the cross-examination
has given the impression that the witness has been guilty of some
*fraudulent* or deceptive conduct as to matters under consideration and
as revealing a document used in cross-examination but not submitted
in evidence that the court will permit the document to be received
in evidence on redirect examination. The purpose in receiving it is,

of course, to rehabilitate the witness in the eyes of the jury by showing the true state of facts revealed by the document. Where such a situation is not present, it is doubtful if an entire document containing incompetent and hearsay evidence should be received in evidence under the guise of rehabilitating a witness who was not discredited in his cross-examination as to the document. The rule governing application of this principle has been expressed in 98 C. J. S., Witnesses, § 427, as follows:

"* * * a mere inquiry as to whether a memorandum of a transaction was made by plaintiff does not authorize a reading of the memorandum in evidence where the testimony in that respect had not been impeached, and similarly an admission by a witness on cross-examination that he made certain statements in an affidavit previously sworn to, no part of which was offered in evidence, does not authorize its introduction in evidence on redirect. The fact that a witness has been cross-examined as to why he omitted to include the statements of certain persons in his report, without eliciting the matters it did contain, will not entitle the other party to introduce the report into evidence, where it is inadmissible as hearsay evidence."

The state cites Sullivan v. Minneapolis St. Ry. Co. 161 Minn. 45, 200 N. W. 922, as supporting its contention that under the circumstances presented here the appraisal report was admissible in evidence. In In re Estate of Ylijarvi, 186 Minn. 288, 243 N. W. 103, a new trial was granted because of the erroneous reception in evidence of a memorandum to corroborate a witness who had not been impeached or discredited by a charge of recent fabrication. There this court, in commenting upon the rule as expressed in the Sullivan case, stated (186 Minn. 290, 243 N. W. 104):

"* * * The rule is that such a memorandum is not admissible in evidence, and the witness cannot refer to it unless it appears that without it he cannot speak from memory * * *. Sullivan v. Minneapolis St. Ry. Co. 161 Minn. 45, 200 N. W. 922. There are exceptions to this rule, as indicated in the Sullivan case. Within the exception there are cases where memoranda are admissible when there is a charge of a recent fabrication; and then, in order to repel and

refute such an imputation, it may be shown that the witness made a similar statement in the form of a memorandum or report as to the matter concerning which he testifies at a time when the supposed motive did not exist. The reception of such a memorandum when admissible is not for the purpose of corroboration but for the purpose of removing a cloud put upon the witness by the other side. In the instant case no one charged Mr. Wilson [the witness] with fabrication. Perhaps witnesses may have differed with him as to the competency of the testator, but that is far from constituting an accusation of fabrication sufficient to support the exception to the rule.

"We need not point out and discuss the various statements made in exhibit eight tending to emphasize its prejudicial character. The argument is that if the reception of exhibit eight is erroneous it is without prejudice. But the difficulty with the argument is that we never know within any degree of certainty the extent that such an exhibit may have influenced jurors."

■ The question here is whether cross-examination of the state's witness with reference to the prior appraisal report cast such doubt upon his credibility or constituted such an impeachment of his qualifications and veracity as to authorize reception of the entire written appraisal report referred to in the cross-examination, and to permit the witness to testify at length with respect to recent sales listed therein. We do not think that the cross-examination described above had this effect. It does not appear to have discredited or impeached the witness in any respect. On the contrary it brought out the fact that he had voluntarily raised his estimate of values to the benefit of the owner after he had considered certain additional sales. This was clearly indicative of his sincere attempt to arrive at an honest opinion, even to the detriment of the party for whom he was testifying. The sole purpose of the cross-examination was to ascertain if there had been a difference in the two reports and if so upon what the difference was based. The witness had frankly revealed this in cross-examination. To hold that this testimony should open the door to the admission of the incompetent hearsay testimony involved in the unsworn written report was erroneous. The witness not having been impeached or dis-

credited in any respect, the admission of the report was not necessary to rehabilitate him. Under the circumstances described, we feel that the reception of this document in evidence constituted material error requiring a new trial.

The order appealed from is reversed, and a new trial granted.