## HOUSING AND REDEVELOPMENT AUTHORITY OF MINNEAPOLIS v. MINNEAPOLIS METROPOLITAN COMPANY AND OTHERS.

141 N. W. (2d) 130.

March 4, 1966—Nos. 39,415, 39,435.

*Joseph Robbie* and *Peter Lindberg,* for appellant Minneapolis Metropolitan Company.

*LeVander, Zimpfer & Tierney* and *Bernhard W. LeVander,* for other appellants.

*MacLaughlin & Harstad,* for respondent.

Rogosheske, Justice.

Minneapolis Metropolitan Company appeals from an order denying its motion for a new trial; J. T. Miller Company and Joe Williams Catering Company appeal from the same order which also denied their motion for entry of judgment.

Pursuant to the Municipal Housing and Redevelopment Act, Minn. St. 462.415, et seq., the Housing and Redevelopment Authority of the city of Minneapolis was granted the power to plan and carry out redevelopment projects in Minneapolis. The plan affecting appellants and known as the "Lower Loop Urban Renewal Plan, Minn. R-2" was adopted by the Authority on November 20, 1958, and was approved by the city council January 30, 1959. It affected more than 200 parcels of property located within a specified area of about 20 city blocks, including the Metropolitan Building.

Condemnation petitions as to the Metropolitan Building and other included parcels were filed in August 1959. Petitions as to the remaining parcels were also filed in 1959 and 1960. The owner of the Metropolitan Building challenged the Authority's right to take the building, and a trial and subsequent appeal resulted in a decision in August 1960 adverse to

the owner.[1] Thereafter, commissioners were appointed. They investigated and viewed the premises, held hearings, and filed their awards on July 7, 1961. Thus, July 7, 1961, is the date of taking and valuation.

The Metropolitan Building, fully described in our prior opinion, was demolished in the spring of 1962. The 3-week-long trial on appeal by the owner, lessees, and the Authority from the commissioners' award of $690,000 (of which $7,000 represented the value of a leasehold) ended on June 20, 1963. The jury's gross award of $740,000 (of which $16,050 represented the value of the leasehold) resulted in an allowance to the owner of the Metropolitan Building of $40,950 more than was awarded by the commissioners. At trial, opinion evidence as to the value of the subject property ranged from $1,058,000 to $850,000 on behalf of the owner and from $765,000 to $559,532 on behalf of the Authority. Each witness expressing an opinion used three basic methods of approach in arriving at his appraisal, variously described as the reproduction- or replacement-cost approach, the capitalization-of-income approach, and the market-data or comparable-sales approach. Because of the delay occasioned by the prior litigation, the Metropolitan Building was one of the last parcels to be taken. By July 7, 1961, the plan had been in effect approximately 2½ years. At that time the Authority had acquired almost all of the included parcels and had converted the area surrounding the Metropolitan Building from one blighted with low-rent hotels and numerous bars to one of broad expanse with parking lots or open land awaiting redevelopment for a high commercial use. It is agreed that the character of the neighborhood on July 7, 1961, the date of the taking, was far different from January 30, 1959, when the Authority became vested with power to acquire the lands. Further, at the time of the trial all of the buildings in the area had been demolished and redevelopment activity was in full progress, readily observable by jurors as they walked to and from the courthouse located 2 blocks from the area. To the observer, the land on which the building stood was in an area of vacant land, parking lots, and new construction.

During trial and over the owner's repeated objection, witnesses for

[1] Housing & Redevelopment Authority v. Minneapolis Metropolitan Co. 259 Minn. 1, 104 N. W. (2d) 864.

the Authority were permitted to describe orally and by exhibits the nature and character of the neighborhood prior to the date of the taking, including a description of buildings in the area encompassed by the plan and surrounding the Metropolitan Building and their uses before all were demolished. Proceeding upon the theory that these factors were relevant to the issue of market value of the property at the time of taking, the Authority elicited testimony as to the past desirability of the neighborhood in which the building was located, its future economic potential, and the effect thereof upon the market value of the premises. Value witnesses were asked to express their opinions of market value as of the date of taking, "assuming no condemnation." In final argument, counsel for the Authority also commented on this evidence in keeping with its position that the owner was not entitled to any increase in market value brought about by the public improvements in the redevelopment area. Approving the Authority's theory, the court included in the instructions to the jury:

"In determining the fair market value of the land and building, you are required to consider the property as though there had been no other pending condemnation by the Authority. You are to decide the market value of the property, that is, Parcel 1, the market value that Parcel 1 would have had on July 7, 1961, if there had not been any condemnation or demolition by the Authority of any properties in the Lower Loop area."

The owner introduced no evidence as to the past character of the neighborhood. The building company's primary contention is that it was a violation of its constitutional right to just compensation determined as of the time of taking and prejudicial error to admit such evidence and to so instruct the jury because the effect was to permit the jury to determine market value at some earlier and indefinite time prior to the taking. Despite repeated statements at trial and here which might indicate that the owner disavowed any attempts to gain by the probable increase in value resulting from the Authority's improvements, the owner argues that Union Depot St. Ry. & T. Co. v. Brunswick, 31 Minn. 297, 17 N. W. 626; Minneapolis, St. P. R. & D. E. T. Co. v. Harkins, 108 Minn.

478, 122 N. W. 450; and Olson v. United States, 292 U. S. 246, 54 S. Ct. 704, 78 L. ed. 1236, permit value testimony which would reflect changes in value caused by the condemning authority.

In our opinion, the Authority's theory and the court's evidentiary rulings are clearly supported by § 462.445, subd. 3, of the Municipal Housing and Redevelopment Act. It reads:

"* * * An award of compensation shall not be increased by reason of any increase in the value of the real property caused by the assembly, clearance or reconstruction, or proposed assembly, clearance or reconstruction for the purposes of this act of the real property in an area."

We have not previously been called upon to construe and apply this provision of the act. It appears to be one common to acts authorizing the exercise of the power of eminent domain in this field of municipal activity.[2] The powers delegated to municipalities by the act contemplate the adoption of plans for the acquisition of tracts within a selected area in order to carry out a specific comprehensive project of rehabilitation, renewal, and redevelopment. The power to take all of the tracts included within a specified area becomes effective upon approval of the plan although the date of taking of any particular tract, as well as the progress of clearance and redevelopment, may vary depending upon numerous factors. When the provision quoted is read with these considerations in mind, it is apparent that the intent was to protect the municipality from paying for any increase in value to a particular tract caused by the knowledge of expected improvement or solely by the planned improvements in progress or completed.

The principle embodied in the statute is one generally followed in the absence of statute that any increase or decrease in market value due to the proposed improvement may not be considered in determining market value.[3] Just compensation within the meaning of our constitutional pro-

---

[2] E. g., Wis. Stat. 1963, § 66.414(2)(a).

[3] United States v. Miller, 317 U. S. 369, 63 S. Ct. 276, 87 L. ed. 336; State v. Botluck (Del.) 200 A. (2d) 424; Commonwealth, Dept. of Highways, v. Wood (Ky.) 380 S. W. (2d) 73; State v. Carswell (Tex. Civ. App.) 384 S. W. (2d) 407.

vision[4] as well as the Fifth and Fourteenth Amendments of the Federal Constitution does not include the right to any increment in value resulting from the taking. It was so declared in Olson v. United States, *supra*. Moreover, directly contrary to the owner's position, it was there held that proffered evidence of the special adaptability of lands for reservoir purposes due solely to the taking and thereby enhancing market value of the lands taken was properly excluded as an element affecting market value. The court stated (292 U. S. 256, 54 S. Ct. 709, 78 L. ed. 1245):

"* * * But the value to be ascertained does not include, and the owner is not entitled to compensation for any element resulting subsequently to or because of the taking."

The rule was again applied in United States v. Miller, 317 U. S. 369, 63 S. Ct. 276, 87 L. ed. 336. There, the government, as part of a reclamation project, condemned a strip of land in order to relocate a railroad right-of-way on account of the prospective flooding of the old right-of-way. The owner claimed value witnesses should have been permitted to state their opinions of market value at the date of taking without excluding any increment of value accruing prior to that date and due to the government's authorization of and commitment to the project. In holding that the owners of lands within the scope of the project were not entitled to any enhancement in value due to the government's activities, the court explained (317 U. S. 374, 63 S. Ct. 280, 87 L. ed. 343):

"Respondents correctly say that value is to be ascertained as of the date of taking. But they insist that no element which goes to make up value as at that moment is to be discarded or eliminated. We think the proposition is too broadly stated. * * *

* * * * *

"If a distinct tract is condemned, in whole or in part, other lands in the neighborhood may increase in market value due to the proximity of the public improvement erected on the land taken. Should the Government, at a later date, determine to take these other lands, it must pay their market value as enhanced by this factor of proximity. If, however, the

---

[4] Minn. Const. art. 1, § 13.

public project from the beginning included the taking of certain tracts but only one of them is taken in the first instance, the owner of the other tracts should not be allowed an increased value for his lands which are ultimately to be taken any more than the owner of the tract first condemned is entitled to be allowed an increased market value because adjacent lands not immediately taken increased in value due to the projected improvement."

From the foregoing, it necessarily follows that both upon equitable principles and express statutory prohibition the court properly overruled the owner's repeated attempts to exclude evidence concerning the character of the neighborhood and its economic potential at the time the Authority became authorized and committed to the redevelopment of the area. It is obvious that, had the evidence been excluded and value witnesses restricted to stating their opinions of market value as of the date of the taking without qualification, the award would have reflected any increase in value resulting from the clearance and improvements in progress.[5] Stated another way, the owner would have in effect obtained treatment of the subject property not as a parcel originally included in the project, but as adjacent lands subsequently condemned, in which case it could not be deprived of the added value by its proximity to the improvement.[6] Such was the treatment accorded to the lands taken in Union Depot St. Ry. & T. Co. v. Brunswick, *supra,* and Minneapolis, St. P. R. & D. E. T. Co. v. Harkins, *supra.* In both cases the subject property was not included as an integral part of a specific project, and for that reason alone the cases clearly do not support the owner's position.

Implicit in the statute is that part of the rule which excludes any decrease in market value caused solely by the taking. Conceivably, such could be the effect of a taking for a redevelopment project. If the owner were precluded from showing the prior character of the neighborhood

---

[5] See Matter of City of New York (Lincoln Square Project), 22 Misc. (2d) 619, 198 N. Y. S. (2d) 248, as an example of the extent of the increase in value reflected solely by the prior activity of the condemnor.

[6] United States v. Miller, *supra;* City of Dallas v. Rash (Tex. Civ. App.) 375 S. W. (2d) 502.

and its favorable economic potential prior to the taking, it would, by eliminating a significant element affecting market value, permit the condemnor to benefit by the act of condemnation and deny the owner just compensation. Neither an owner nor a condemnor is permitted to gain by any increase or decrease in value of the land taken due to the impact upon land values generated by an area redevelopment project for which the tracts included are acquired.

While we believe that the phrase "assuming no condemnation," used in questioning the witnesses, and perhaps in less degree the language of the quoted instruction leave something to be desired in communicating the rule to the jury, we are satisfied upon this record that the jury was not misled. All participants in the trial knew that condemnation had been effected and that redevelopment activities were in progress, and all witnesses who gave value testimony fixed July 7, 1961, the date of the taking, as the date of appraisal. Considering the arguments used by the owner to express its position as to the effect of the statutory provision, we believe that the language used was understood to mean the same as if the value questions asked and the instructions had more precisely excluded from the factors affecting market value at the date of taking any increment attributable to the taking, clearance, and redevelopment pursuant to the plan.

Accordingly, as to this the substantial issue raised, we hold that the constitutional requirement of just compensation at the date of taking does not include the right to any enhancement of value resulting from the taking and that the court's application of the rule embodied in the statutory provision did not prejudice any of the owner's rights.

Examining the record as a whole, we are satisfied that the owner received a fair trial and that the award of the jury is amply supported by the evidence. We have considered the other assignments of error, all of which relate to the court's rulings on evidence, and we find no basis upon which we could disagree with the rulings made. The court properly refused to strike the testimony of the expert witnesses called by the Authority, for the record does not support the owner's claim that any of them based his opinion of value upon the opinions of other witnesses or others not called to testify but shows rather that each expressed his own opinion.

Also, the court in its discretion could, and we believe properly did, limit testimony and records of net rental income of the Metropolitan Building from 1955 to 1961 upon the ground that such income for the entire period of appellant's ownership was too remote. Nor can we agree that the court erred in excluding the owner's offer of proof of the undepreciated cost of various capital improvements made to the building during the 15-year period of ownership as an independent item of value unrelated to the testimony of any value witness. Sums invested by the owner over a period of years are synonymous with neither reproduction costs at the time of taking nor market value, and the offered evidence was clearly inadmissible.[7] Finally, the court properly refused to admit evidence upon cross-examination of the sale price of property designated as the "Olson property." This property, sold in 1958, was located two blocks from the tract on which the Metropolitan Building stood and was identical in size and shape. Two appraisers called by the Authority testified that they were aware of the sale but did not consider it comparable and in no way gave it any weight in making their appraisals of the subject property. The owner made no attempt to introduce evidence of the sale price other than by attempts to elicit it upon cross-examination. Had either witness regarded the Olson property as comparable and used it as a factor in arriving at his appraisal of the subject property, the evidence clearly would have been admissible as a test of his good faith and the accuracy and extent of his knowledge upon which he based his opinion.[8] As the foundation necessary to invoke admissibility was wholly lacking, the court's ruling was proper. Since the owner made no attempt to introduce the sale price as substantive evidence of market value, there is no necessity for considering our prior decisions concerning admissibility of the sale price of comparable lands as substantive evidence of value.

Upon objection of the owner, the court denied the joint motion of J. T. Miller Company and Joe Williams Catering Company for entry of judg-

[7] State, by Lord, v. Red Wing Laundry & Dry Cleaning Co. 253 Minn. 570, 93 N. W. (2d) 206; Palmer, Manual of Condemnation Law, § 139.

[8] State, by Lord, v. Winiecki, 263 Minn. 86, 115 N. W. (2d) 724; Minneapolis-St. Paul Sanitary Dist. v. Fitzpatrick, 201 Minn. 442, 277 N. W. 394, 124 A. L. R. 897.

ment against the Authority. These appellants were separately awarded compensation for their leasehold interests. The owner opposed granting the joint motion — presumably for the reason that if judgment were entered and subsequently a new trial was ordered on appeal the lessees would not participate and their efforts to establish the highest possible valuation of the leaseholds would be lost to the owner. It is clear, however, that the owner made no attempt to controvert the lessees' claims at trial nor has the owner challenged the separate awards as excessive or insufficient. The lessees are parties to the action in their own right.[9] If they are satisfied with the awards made, the owner should not be permitted to force a retrial of their separate claims where the owner in no manner questions the awards. Rule 54.02, Rules of Civil Procedure, empowers the court to direct entry of separate judgments in actions presenting multiple claims for relief where there is no just reason for delay. Since the owner has in no wise challenged the awards to the lessees, we are unaware of any just reason why entry of judgment should not have been ordered. Had a new trial been granted to the owner, the amount awarded to the lessees could readily be deducted from the owner's gross award.

Affirmed as to appellant Minneapolis Metropolitan Company, and reversed and entry of judgment ordered as to appellants J. T. Miller Company and Joe Williams Catering Company.

MR. JUSTICE THOMAS GALLAGHER took no part in the consideration or decision of this case.

---

[9] Seabloom v. Krier, 219 Minn. 362, 18 N. W. (2d) 88.