REGENTS OF THE UNIVERSITY OF MINNESOTA
v. JOHN G. HIBBING AND OTHERS.
SUSAN PEKAR KISSELL, APPELLANT.

225 N. W. 2d 810.

January 17, 1975—No. 44560.

482

*G. Stanley Rischard* and *Duane Franke,* for appellant.

*Donald R. Bundlie,* Special Assistant Attorney General, for respondent.

Heard before Peterson, Kelly, and Knutson, JJ., and considered and decided by the court en banc.

KELLY, JUSTICE.

This is an appeal by the property owner in a condemnation proceeding to determine the fair market value of a parcel of

residential property located in the Cedar-Riverside area of Minneapolis taken by the University of Minnesota as part of a proposed expansion of its West Bank Campus.

The commissioners fixed the award at $29,950. An appeal from that award was taken by both parties. On June 7, 1973, a jury rendered a verdict finding damages in the amount of $26,225. The property owner appealed from the order of the district court denying a motion for an additur or a new trial.

Appellant is the owner of a duplex located at 2113 Fifth Street South in Minneapolis. This location is within a proposed expansion of the West Bank Campus of the University of Minnesota. The University's Board of Regents, in January 1961, authorized its administrative officers to negotiate for the purchase of property within that area. The acquisition of appellant's property and five other parcels, all in Block 184, Town of Minneapolis, by condemnation was authorized by a resolution of the Board of Regents passed on July 11, 1969.

At the trial of this matter, appellant's expert witness, Richard H. Sauve, testified that the highest and best use of the property would be redevelopment for high density and multiple dwellings use. He agreed that appellant's property, 33 feet by 165 feet, was not of sufficient size to build on without assemblage of other parcels in the block.

Over appellant's objection, the condemnor introduced into evidence a map of Block 184, marked Exhibit D, showing the condemnation parcels. Vernon Ausen of the University property acquisitions department testified that Exhibit D also showed the various parcels in Block 184 which were owned by the University and the date of acquisition of each, and further testified that these properties were all acquired by the University by direct purchase rather than by condemnation.

Fritz E. Brandberg, an independent appraiser hired by the University, testified that the market value of the property would be $19,000, assuming there could be an assemblage with other properties in the block and assuming the zoning would change

from R-4 to R-5 (permitting 6-unit, 3-story walkup dwellings).

Clarence A. Lowe, another witness for the University, also assuming rezoning and assemblage possibilities, testified that the market value was $20,600.

These issues are presented on appeal:

A.   Whether the following evidence was admissible on the question of fair market value of appellant's property: (1) Evidence showing condemnor's prior acquisition of other property in the same block to show the improbability of substantial private assemblage; (2) Testimony that the condemnor was using taxpayers' money for its property acquisitions; (3) Testimony regarding the policy and procedures used by the condemnor in acquiring property.

B.   Whether it was prejudicial error for the trial court in its instructions to the jury to mention that the landowner may be an unwilling seller.

1.   Appellant's primary contention is that evidence of prior acquisitions by the University of property in the same block as appellant's lot should have been excluded as irrelevant and prejudicial. It is a generally accepted principle that the price paid by the condemnor for other land in the vicinity is inadmissible. See, Palmer, Manual of Condemnation Law, § 170. While there was no testimony as to the price paid by the University for any parcels shown on Exhibit D, it is arguable that the jury may have concluded that those acquisitions were the result of transactions between willing sellers and the University, and were at a price closely related to the valuation of appellant's property as testified to by the University's experts.

The University concedes that there is authority for the rule against admitting evidence of the sale price of other property in the area sold to the prospective condemnor, but argues that it is the price alone that is objectionable, not the mere status of ownership of the other parcels in the block.

Certainly no useful purpose was served by the introduction of this evidence. It had no bearing on, or relevancy to, the only

issue for trial—the determination of the fair market value of appellant's property. This evidence may have improperly influenced the jury and it was error to have permitted its introduction. If this were the only error, we might have concluded that it was not so prejudicial as to have required a new trial.

Appellant also contends that it was error to admit evidence of the prior acquisition of various parcels in the block in order to establish the limited possibilities of assemblage. Appellant cites a leading Minnesota case, Housing & Redevel. Authority v. Minneapolis Metropolitan Co. 273 Minn. 256, 141 N. W. 2d 130 (1966), for the proposition that an owner of a tract of land included in a redevelopment project is not entitled to any increase in the market value of the tract due to the impact upon values resulting from the taking, clearance, and redevelopment pursuant to the project. Appellant then argues that the reverse of this situation—decrease in the value of property because the University's prior purchases limited the assemblage possibilities— is analogous, requiring application of a parallel rule of law. This court did say in the Minneapolis Metropolitan case:

"Implicit in the statute is that part of the rule which excludes any decrease in market value caused solely by the taking. Conceivably, such could be the effect of a taking for a redevelopment project. If the owner were precluded from showing the prior character of the neighborhood and its favorable economic potential prior to the taking, it would, by eliminating a significant element affecting market value, permit the condemnor to benefit by the act of condemnation and deny the owner just compensation. Neither an owner nor a condemnor is permitted to gain by any increase or decrease in value of the land taken due to the impact upon land values generated by an area redevelopment project for which the tracts included are acquired." 273 Minn. 262, 141 N. W. 2d 136.

In City of Cleveland v. Carcione, 118 Ohio App. 525, 531, 190 N. E. 2d 52, 56, 5 A. L. R. 3d 891, 897 (1963), the court said:

"The rule of law is well-established, in Ohio and elsewhere, that the fair market value of property appropriated, which property is a part of a program of improvement by a public body, cannot be enhanced by the value of such improvement to it.

\* \* \* \* \*

"The reverse of such a situation—the depreciation in value of a parcel of property at the time appropriated where the property is included in a general plan of condemnation to carry out a specific program of the condemnor—is analogous in principle and should, we believe, invoke the application of a parallel rule of law."

Annotation, 5 A. L. R. 3d 901, frames the issue as follows:

"\* \* \* [W]hether, and how, *decline* in the value of land ultimately taken in eminent domain, occurring between the time when the *probability* arises that land will be taken and the time the land in question actually is taken, and attributable to the project for which the taking later occurs, affects the compensation to which the landowner is entitled." (Italics supplied in part.)

We conclude under the rationale of these authorities that it was error to have admitted evidence of the University's prior acquisition by direct purchase of other property in the same block. Exhibit D to which appellant objected is a map showing part of the expansion project of the University's west bank area. The Board of Regents of the University by a resolution in 1961 established the boundaries of the west bank University area and authorized the acquisition of all properties within that area including appellant's property. The University then had the power of eminent domain as it does now. Were we to permit entities planning to acquire a block or other area of land to do so piecemeal by purchase or condemnation and thereby adversely affect the value of the remaining parcels by thwarting any reasonable possibilities for assemblage, we would be permitting these entities to acquire land by condemnation without justly compensat-

ing the owners. The fact that a condemnor acquires various parcels of land by direct purchase rather than by condemnation should make no difference because of the ever-present threat of eminent domain.

It was error to have received over objection evidence of prior acquisition of parcels of land by the University where that evidence would limit the assemblage possibilities and thereby adversely affect the market value of the land being condemned. The date of taking here is the date of the commissioner's award, and the market value of appellant's land is to be determined as of that date. The acquisition by the University of other parcels in the same block as appellant's land prior to that date should not be submitted to the jury or have any effect on the possibilities of appellant's land having a higher value because of its availability together with other parcels in the block for assemblage.

2. Appellant contends that she was denied a fair trial because of testimony showing that taxpayers' funds are being used to pay for the University's appraisal and property acquisitions. Mr. Ausen, the University's real estate coordinator was asked:

"Q. And what's the purpose of an appraisal or getting the appraisals?

"A. Well, we have to have a basis—we have to have a judgment as to the value so that we will know what can be offered for the property. *We are using taxpayers' money,* and so we get the two appraisals and then we make offers between the limits of those appraisals." (Italics supplied.)

The source of the funds used by the condemnor has no probative value as to the market value of property being condemned. In most instances such evidence, if admitted by inadvertence and not argued, would be considered harmless error as most jurors are aware of the source of funds. However, because we are granting a new trial for other reasons, we direct that such evidence is improper and should not be introduced again. It may well be that in some cases where the source of funds is deliberately

introduced and unduly argued, it could be considered as an inflammatory plea to the jurors' passions.

3. Appellant also complains of the admission of Mr. Ausen's testimony with regard to policies and procedures used by the University in acquiring property. In general, the testimony of Mr. Ausen as to the policy and procedures used by the University in acquiring property was designed to show how fair and reasonable the University was in arriving at offers to be submitted to owners. This testimony had no probative value as to the fair and reasonable market value of the property in question. In showing how fair and reasonable the University's procedures were, an equal and opposite inference was created that the property owner was unreasonable in refusing a supposedly fair offer. This kind of testimony should not be repeated in the event the case is tried again. We do not hold that this would necessarily be error requiring a new trial in all instances but do conclude it was not relevant.

4. Finally, appellant contends that it was prejudicial error for the court in its instructions to the jury to mention that the landowner may be an unwilling seller. In connection with this issue, appellant claims that the claimed error was compounded by requiring appellant's son to testify on cross-examination, over her counsel's objection, that he had sold at an earlier date property to the University.

Again, we see no relevancy in this testimony. Such evidence could not assist the jury in determining the value of the mother's property. Standing alone, it arguably could give rise to an inference that the son would not have sold his property unless the University had given him a fair offer. There are many reasons for people selling to a condemnor and at times when they do not receive a fair offer. Property owners faced with the prospect of long drawn-out proceedings in eminent domain, including the hiring of appraisers and lawyers, may capitulate without receiving the fair and reasonable market value to which they are entitled. In any event, the testimony elicited by cross-examina-

tion should not be received in the event there is a new trial. It is conceivable that in other cases under different circumstances this type of testimony would be harmless error if error at all.

The instructions complained of standing alone without all of the evidence tending to show how fair the University treated landowners could hardly be error. The trial court instructed the jury in this regard as follows:

"* * * I don't know, but it may be that the landowner in this case didn't want her land to be taken. * * *

"Now, in all situations such as this, we have, perhaps, a situation of a somewhat unwilling seller who is compelled by reason of the public's paramount need to give us his or her property and all rights in it."

We do not see any reason for giving this instruction. In this case the instruction, taken together with all the evidence tending to show how fair the University was, might strengthen the inference that the property owner was unreasonable and stubborn.

However, in the absence of the inappropriate evidence as to the fairness of the University, such an instruction might be considered prejudicial to the condemnor. The general rule, as admitted by appellant's brief, is that it is improper for a landowner to comment on his unwillingness to sell his property as it would tend to prejudice the condemnor by creating sympathy for the landowner. See, Annotation, 17 A. L. R. 3d 1449.

Reversed and remanded for a new trial.

MR. CHIEF JUSTICE SHERAN took no part in the consideration or decision of this case.